Oscar **LECHUGA** and **Rosantina Lechuga,** Plaintiffs–Appellants,

v.

**SOUTHERN PACIFIC TRANSPORTATION COMPANY,** Defendant,

**Reynolds Metals Company,** Defendant–Appellee.

No. 90–8727
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Jan. 2, 1992.

Cynthia L. Muniz–Berain, Rodriguez & Muniz–Berain, Eagle Pass, Tex., for plaintiffs-appellants.

Gary Antony Scarzafava, Law Office of Sean P. Martinez, San Antonio, Tex., Javier S. Martinez, Martinez & Downs, Houston, Tex., for Reynolds Metals Co.

Before JONES, DUHÉ, and WIENER Circuit Judges.

PER CURIAM:

In this Texas personal injury case, Plaintiffs–Appellants Oscar Lechuga and his wife, Rosantina, filed suit against Southern Pacific Transportation Company as landowner (not a party to this appeal) and Reynolds Metals Company as lessee. The Lechugas appeal from the district court's "take nothing" partial summary judgment against them and in favor of Defendant–Appellee Reynolds. Finding no reversible error, we affirm.

## I.

### FACTS

At the time of the occurrence giving rise to this case, Mr. Lechuga was an agent with the United States Border Patrol. As a Border Patrol agent assigned to the Ea-

gle Pass (Texas) sector, Lechuga's duties included the detection and apprehension of illegal aliens who entered the United States across its border with Mexico.

Reynolds operated a plant near Eagle Pass on land it leased from Southern Pacific Transportation Company (the "property"). The property abuts the Rio Grande River. The plant was a metallurgical mill production plant that processed flourspar to produce calcium flouride. Raw materials from Mexico were brought directly across the Rio Grande by rail, processed, and transported, again by rail, to another Reynolds location in this country. The property is bisected by a railroad track, and a railroad bridge connects the property with Mexico on the opposite side of the river. The bridge has no gates, fences, or barriers and is a favorite illicit "port of entry" for illegal aliens. For this reason, the Border Patrol installed heat sensors near the bridge. The Border Patrol also smoothed dirt roads on the Reynolds property periodically by dragging tires along the roads so that fresh footprints would be apparent.

The plant, which had been closed permanently by the time of Lechuga's injury, comprised three areas. One, the compound area, is the only one of the three that is enclosed by a fence. It includes the mill, offices, warehouse, stockpile area, and several railroad spurs. The second area, adjacent to the first, contains evaporation ponds used in the milling process. The third area is immediately adjacent to the railroad bridge, and it contains settling ponds and reclaim ponds that are connected by pipes and drainage ditches or canals.[1] The canals are about one foot wide and several inches deep. The area is also criss-crossed by numerous dirt roads. Because the plant was in the process of being sold at the time of Lechuga's accident, Reynolds maintained only three employees on the premises.

At about 2:30 a.m. on the morning of his accident, Lechuga and his partner responded to signals from the heat sensors indicating activity near the railroad. Upon reaching the area of the bridge, the agents parked their vehicle and pursued their quarry on foot. The night was very dark. Lechuga's partner used a flashlight but Lechuga did not. The partner, traveling a few steps ahead, negotiated one of the connecting canals without difficulty, but Lechuga tripped and fell, apparently when he stepped on a dirt knoll next to the canal. After the fall, the agents discontinued pursuit.

Lechuga testified in his deposition that he was familiar with the terrain in the area. He was also aware of the existence of the canal over which he fell. He acknowledged that Border Patrol agents made numerous trips onto the Reynolds property because of the high volume of alleged alien foot traffic across the railroad bridge.

## II.

## PROCEEDINGS

Lechuga and his wife filed this action against Reynolds and Southern Pacific Transportation in a Texas district court claiming that Lechuga was an invitee of Reynolds and was owed a duty of ordinary care. Reynolds and Southern Pacific removed the action to federal court on the basis of diversity jurisdiction. Reynolds and Southern Pacific also filed cross-actions against each other. At close of discovery, Reynolds and Southern Pacific filed separate motions for summary judgment. The district court did not grant Southern Pacific's motion for summary judgment, but did enter summary judgment in favor of Reynolds against the Lechugas, and severed the Reynolds/Southern Pacific cross-actions. The court found that the evidence established that Lechuga was not an invitee but merely a licensee at the time he entered the property, and that as such he was not entitled to a standard of ordinary care; rather Reynolds owed him only a duty not to injure him willfully, wantonly or through gross negligence. The Lechugas did not allege a breach of a duty owed to a licensee. The district court granted

---

1. The process does not produce toxic chemicals.

summary judgment to Reynolds. The Lechugas timely appealed.

## III.

## STANDARD OF REVIEW

■ This court reviews the grant of summary judgment motion de novo, using the same criteria used by the district court in the first instance.[2] We "review the evidence and inferences to be drawn therefrom in the light most favorable to the nonmoving party."[3] Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[4] Fed.R.Civ.P. 56(e) requires that when a proper motion for summary judgment is made, the non-moving party must set forth specific facts showing that there is a genuine issue for trial.[5] The mere existence of an alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[6] "Material facts" are "facts that might affect the outcome of the suit under the governing law."[7]

## IV.

## ANALYSIS

Lechuga makes two arguments on appeal. First, he contends that the district court erred when it held that he was a licensee and not an invitee on the Reynolds property. Second, he argues that there is a genuine issue of material fact with respect to whether Border Patrol presence on the property conferred a benefit on Reynolds.

### A. *Invitee or licensee?*

■ In Texas' premises liability cases based on negligence, any recovery in tort is predicated on the plaintiff's proving the existence and violation of a legal duty owed to the plaintiff by the defendant.[8] In each instance, the duty owed by a premises owner or occupant (possessor) is determined by the status of the person injured on the premises.[9] This status is a legal question except when sufficient issues of fact exist to warrant submission to a jury.[10] A person who enters the property of another will normally be classified as an invitee, a licensee, or a trespasser.[11]

■ As stated by the district court, a possessor owes to his invitee a duty of ordinary care that a reasonably prudent person would exercise under the circumstances.[12] The possessor owes a lesser standard to a licensee or a trespasser. The possessor's duty of care to a licensee or trespasser is merely not to injure him willfully, wantonly, or through gross negligence.[13]

■ There is, however, one exception to the standard of care owed to licensees:

2. *Walker v. Sears, Roebuck & Co.,* 853 F.2d 355, 358 (5th Cir.1988).

3. *Baton Rouge Bldg. & Constr. Trades Council v. Jacobs Constructors, Inc.,* 804 F.2d 879, 881 (5th Cir.1986) (per curiam) (citing *Southmark Properties v. Charles House Corp.,* 742 F.2d 862, 873 (5th Cir.1984)).

4. Fed.R.Civ.P. 56(c).

5. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

6. *Id.* at 248, 106 S.Ct. at 2510.

7. *Id.*

8. *Abalos v. Oil Dev. Co.,* 544 S.W.2d 627, 631 (Tex.1976), *citing Coleman v. Hudson Gas and Oil Corp.,* 455 S.W.2d 701 (Tex.1970).

9. *State v. Tennison,* 509 S.W.2d 560 (Tex.1974).

10. *Olivier v. Snowden,* 426 S.W.2d 545, 550 (Tex. 1968).

11. *Rowland v. Corpus Christi,* 620 S.W.2d 930, 933 (Tex.Civ.App.—Corpus Christi 1981, writ ref'd n.r.e.).

12. *Corbin v. Safeway Stores, Inc.,* 648 S.W.2d 292 (Tex.1983).

13. *Burton Constr. & Shipbuilding Co., Inc. v. Broussard,* 154 Tex. 50, 273 S.W.2d 598 (1955).

when a possessor has knowledge of a dangerous condition on the land, and the licensee does not, the possessor has a duty either to warn the licensee or to make the condition reasonably safe.[14] This exception is not equally applicable to trespassers; the possessor has no such duty to a trespasser.

 Lechuga was not a trespasser because he entered the Reynolds property pursuant to lawful authority.[15] Lechuga must therefore have been either an invitee or a licensee at the time of his injury. The distinction between a licensee and an invitee is important because, unlike a licensee, an invitee enters the premises with the assurance of preparation and reasonable care for his safety and protection while he is there.[16]

The term "invitee" is a legal term of art, more limited than the general sense of the term "invitation." [17] Texas has generally accepted the Restatement of Torts view of "invitee." The Restatement explains that there are two types of invitees:

(1) An invitee is either a public invitee or a business visitor;

(2) A public invitee is a person who is invited to enter and remain on land as a member of the public for a purpose for which land is held open to the public;

(3) A business visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land.[18]

Texas has long recognized the distinction between a public invitee and a business invitee.[19] The Texas Supreme Court has stated:

The most essential factor to be considered in determining [invitee status] is whether the premises were public or private. If one uses his premises for private purposes, he ... is under no obligation to keep his premises in a safe condition for the protection of those who enter without his invitation. It may be more convenient for him and for those who live and work thereon to allow the premises to remain in a condition that would be unsafe as to strangers. Under such circumstances, strangers having no business thereon of interest to owner have no right to demand that such owner keep his premises in such condition that they may enter on safely at their will.

. . . . .

A mere naked license or permission to enter or pass over an estate will not create a duty or impose an obligation on the part of the owner or person in possession to provide against the danger of accident.[20]

 Lechuga is not a public invitee. The Reynolds plant was not a retail establishment that "invited" the public to enter. The property cannot even be construed as land open to the public, even implicitly. In fact, at the time of Lechuga's accident, the plant was closed. Consequently, if Lechuga was an invitee at all, he would have to have been a business invitee.

 "The theory holds that a possessor may, in certain circumstances, be charged with a duty to make the premises reasonably safe for visitors who enter thereon for business purposes, even though the premises are *not* held open to the public general-

---

**14.** *Lower Neches Valley Authority v. Murphy,* 536 S.W.2d 561 (Tex.1976); *Weaver v. K.F.C. Management, Inc.,* 750 S.W.2d 24 (Tex.App.—Dallas 1988 writ denied).

**15.** *Rowland,* 620 S.W.2d at 933.

**16.** Restatement (Second) of Torts § 332 comment a (1965).

**17.** Restatement (Second) of Torts § 332 comment a (1965); *See Dominguez v. Garcia,* 746 S.W.2d 865, 866–67 (Tex.App.—San Antonio 1988, writ denied) (a guest, although invited, is merely a licensee).

**18.** Restatement (Second) of Torts § 332 (1965); *Prestwood v. Taylor,* 728 S.W.2d 455, 458–59 (Tex.App.—Austin 1987, writ ref'd n.r.e.).

**19.** *See, e.g., Renfro Drug Co. v. Lewis,* 149 Tex. 507, 235 S.W.2d 609, 616–17 (1950) (applying Restatement [First] of Torts § 332); *Carlisle v. J. Weingarten, Inc.,* 137 Tex. 220, 152 S.W.2d 1073, 1075–76 (1941) (public v. private use); *Prestwood,* 728 S.W.2d at 458–59, 462.

**20.** *Carlisle,* 152 S.W.2d at 1075–76. *See Renfro Drug,* 235 S.W.2d at 616.

ly."[21] Although some jurisdictions have apparently relaxed the standard for determining if a person is a "business invitee,"[22] Texas continues to require that (1) the business invitee be invited onto the property, and that (2) his presence directly benefits the possessor/owner of the land.[23] For Lechuga to have been a business invitee, he must establish that Reynolds expressly or impliedly invited him or the Border Patrol onto its property, *and* that his presence, or that of the Border Patrol, provided a direct benefit to Reynolds.

### 1. Was Lechuga or the Border Patrol invited by Reynolds?

The Texas courts have articulated the minimum evidence necessary to clothe a visitor with the legal status of an "invitee"—words or conduct by the possessor that lead or encourage the visitor to believe that his entry is *desired* by the possessor. On the other hand, if the words and conduct justify one in believing that the possessor is merely *willing* for the visitor to enter the premises if *he* so desires, that does not constitute him an "invitee" *even though* his entry is connected with a purpose, business or otherwise, for which the possessor uses the land.[24]

■ The uncontroverted summary judgment evidence shows that Reynolds knew of the Border Patrol's presence on the property. Reynolds was aware that illegal aliens used the railroad bridge for access to the United States. Reynolds was also aware that the Border Patrol had installed heat sensors and that agents entered the property on a regular basis to smooth the roads and apprehend aliens. A Reynolds official even related that the company had called the Border Patrol on occasion when

Reynolds had found aliens in the compound area or hiding in boxcars on the property. But mere knowledge of the Border Patrol's activities on the property does not rise to the level of "invitation." It is, at most, permission. Even if a prior request by Reynolds for removal of aliens could be construed as an invitation, it was clearly limited to the particular incident, without any carryover effect. Besides, nothing like that happened in the instant case.[25] When he fell, Lechuga and his partner were responding to indications from the heat sensors that people were in the area. Those sensors were placed on the property by the Border Patrol, not by or at the instigation of Reynolds.

■ Neither can an "invitation" be inferred from Lechuga's official status. In *Prestwood,* the court relied on Restatement (Second) of Torts § 345 in holding that a bankruptcy trustee, who was injured when he entered a building in which effects of a bankrupt debtor were stored, was not an invitee solely because the trustee was legally entitled to enter the premises by reason of his official status.[26] Section 345(1) states that "the liability of a possessor of land to one who enters the land only in the exercise of a privilege, for either a public or a private purpose, and irrespective of the possessor's consent, is the same as the liability to a licensee."[27] The Restatement's comments are even more revealing:

Firemen and policemen entering under authority of law, without any such element of business dealing, are commonly held by Courts to stand on the same footing as licensees ... One explanation of this lies in the fact that firemen and policemen are likely to enter at unforeseeable times upon unusual parts of the

21. *Prestwood,* 728 S.W.2d at 458 (emphasis in original).

22. *Id. See* Restatement (Second) of Torts § 332(3).

23. *Id.* 728 S.W.2d at 458–59.

24. *Id.* 720 S.W.2d at 463 (emphasis in original). *See also Olivier,* 426 S.W.2d at 550; Restatement (Second) of Torts § 322, comment b.

25. Invitee status is limited to the time and place of the invitation. A prior invitation or invitation to part of the property is not an invitation for another time or another part of the property. *See, e.g., Burton Constr.,* 273 S.W.2d at 602; *Hopkins v. Texas Power & Light Co.,* 514 S.W.2d 143, 148 (Tex.Civ.App.—Dallas 1974, no writ).

26. *Prestwood,* 728 S.W.2d at 464.

27. Restatement (Second) of Torts § 345(1).

premises, and under circumstances of emergency, where care in preparation of their visit cannot reasonably be expected; and they do not have the implied representation of assurance of such care when is the basis of greater duty to an invitee.[28]

Consistent with Section 345 of the Restatement, Texas courts have found that police officers are merely licensees. In *Walters v. Southern S.S. Co.,*[29] a police officer was injured when his motorcycle struck a steel plate left on the defendant's dock. Like Lechuga, he argued that he was a business invitee because he was on the defendant's property to protect people and property from violence. He was not expressly invited onto the premises by the defendant on the occasion in question, even though evidence was presented that the defendant had previously requested police protection. The court found that the defendant was not negligent in creating and leaving the hazard because at the time and place of the accident, as a matter of law, the police officer was "no better than a licensee."[30]

 When a court finds a public officer to be an invitee rather than a licensee, it is generally because the officer was injured on land open to the public.[31] The courts require a higher duty of care in instances when the land is open to the public,[32] because a fireman or policeman may reasonably assume that the land has been prepared for the public. It would be inconsistent and unreasonable to hold the possessor to a lesser duty of care to a police officer than to members of the public.[33] Therefore, officers harmed on land open to the public are treated like invitees.[34]

That is not the situation here. Reynolds' property was a metallurgical mill closed at the time of the accident. In no way could it be deemed "land open to the public."

 We reject Lechuga's contention that Reynolds owed him a heightened duty because Border Patrol agents constantly came on the property looking for illegal aliens, making their presence foreseeable. Foreseeability of presence is not determinative of whether Lechuga was an invitee or a licensee. After all, a possessor who either expressly or tacitly gives a licensee permission to be on the property obviously foresees the possibility or even probability that the licensee will be present on the premises. In and of itself, foreseeability does not convert a licensee to an invitee.

2. Did Lechuga's presence bestow a benefit?

The two part test for determining an individual's status as an invitee requires Lechuga to show that Reynolds invited him onto the property and that Reynolds derived a benefit from Lechuga's presence. The test is conjunctive. Because we agree with the district court that Lechuga was not invited onto the property, we could end our analysis there. But in this case we are constrained to hold in the alternative that Reynolds derived no benefit from Lechuga's presence, thereby eschewing invitee status.

 For a claimant to meet the benefit prong of the invitee test, the benefit a possessor derives from the claimant's presence must be a *direct pecuniary* benefit.[35] In *Prestwood*, the court declined to find a direct pecuniary benefit notwithstanding that the lessor, who was a creditor of the bankrupt debtor, might have benefited

**28.** Restatement (Second) of Torts § 345, comment c.

**29.** 113 S.W.2d 320, 322 (Tex.Civ.App.—Galveston 1938, writ dism'd).

**30.** *Id.* at 322.

**31.** *See, e.g., Texas & P.R. Co. v. Boyd,* 141 S.W. 1076 (Tex.Civ.App.—Ft. Worth 1911, writ ref'd); *Andrews v. York,* 192 S.W. 338 (Tex.Civ.App.— San Antonio 1917, no writ).

**32.** *See Rosas v. Buddies Food Store,* 518 S.W.2d 534 (Tex.1975).

**33.** *See* Restatement (Second) of Torts § 345 comment e.

**34.** *Id.* § 345(2).

**35.** *Prestwood,* 728 S.W.2d at 458–59; *See generally Olivier,* 426 S.W.2d 545.

eventually from the trustee's presence on the property.[36]

▮ Lechuga argues that, as Reynolds had in the past experienced problems with vandals and thieves, the Border Patrol's presence on the property constituted a benefit because the agents chased off trespassers and apprehended aliens who used the property for a staging area while waiting for trains to pass through. Although this may have afforded Reynolds a heightened sense of security, we perceive nothing in Lechuga's summary judgment evidence constituting a direct pecuniary benefit. Just such an argument was rejected by the court in *Walters,* wherein the plaintiff police officer argued that his presence would protect the defendants, the public, and property from violence.[37] We are no more inclined to accept that argument here. In fact, we find even less of a benefit here than in *Walters* because Lechuga is a Border Patrol agent whose normal duties do not include enforcement of state criminal laws such as those protecting the property of businesses like Reynolds from trespass or vandalism. Rather, his responsibility is to preserve the integrity of the border and enforce immigration laws, matters that are not of direct concern to Reynolds. Therefore, we cannot agree that Reynolds received a direct pecuniary benefit from the presence of the Border Patrol in general or Lechuga in particular.

▮ Lechuga also asserts that whether the presence of the Border Patrol confers a benefit on Reynolds presents a genuine issue of material fact, pretermitting summary judgment. We disagree. In his affidavit, Lechuga states nothing more than

> The removal of illegal aliens from the Reynolds Metals and Southern Pacific property, was a benefit to Reynolds Met-

als and to the Southern Pacific Transportation Company. The illegal aliens often disturbed and/or destroyed the property on the Reynolds Metals plant, and we would prevent them from trespassing thereon.

The party opposing summary judgment must come forward with specific facts showing that there is a genuine issue for trial.[38] Conclusory statements in an affidavit do not provide facts that will counter summary judgment evidence,[39] and testimony based on conjecture alone is insufficient to raise an issue to defeat summary judgment.[40] Lechuga's statements in his affidavit are conclusory and unspecific, and as such are inadequate to raise a genuine issue of fact in this case.

### B. *Can Lechuga recover from Reynolds as a licensee?*

A licensee is

> a person whose entrance upon or use of the premises of another is permitted by the owner under such circumstances that he is not a trespasser but is without any express or implied invitation. He is on the premises by sufferance and not by virtue of any business or contractual relations with, or any enticement, allurement, or inducement to enter being held out to him by the owner or occupant, but merely in his own interest or for his own purposes, benefits, convenience or pleasure.[41]

Lechuga had neither an expressed nor an implied invitation to enter to Reynolds property, and his presence on the property conferred no direct pecuniary benefit on Reynolds. Therefore, he cannot be an invitee. He was not a trespasser because he was acting in his official capacity. By the process of elimination, therefore, Lechuga's status was that of a mere licensee

---

36. *Prestwood,* 728 S.W.2d at 464.

37. *Walters,* 113 S.W.2d at 322.

38. *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511.

39. *E.E.O.C. v. American Federation of Government Employees (AFGE) Local 1617,* 657 F.Supp. 742, 746 (W.D.Tex.1987).

40. *Slaughter v. Allstate Ins. Co.,* 803 F.2d 857, 860 (5th Cir.1986).

41. *Rowland,* 620 S.W.2d at 933.

when he entered the property. We must determine if he can recover as a licensee.

■ Reynolds owed Lechuga, as a licensee, a duty of care not to injure him willfully, wantonly, or through gross negligence. Lechuga did not plead that Reynolds' action or inaction was willful or wanton, or that it constituted gross negligence. Neither did he proffer any evidence that would support such a conclusion. Therefore, Lechuga may only recover if he proves that (1) Reynolds had knowledge of a dangerous condition on the property, (2) Lechuga did not have that knowledge, and (3) Reynolds failed to warn Lechuga of the dangerous condition or to make the condition reasonably safe.[42]

■ Although it can reasonably be inferred that Reynolds was aware of the canal over which Lechuga stumbled, there was no summary judgment evidence presented that would indicate that the condition was necessarily dangerous. The plant manager testified that he was surprised that Lechuga fell where he did because the area was "fairly level" and not as precarious as other areas of the property. More importantly, there is ample evidence, including his own testimony, that Lechuga had knowledge of the condition of the property. In his answers to interrogatories propounded by Reynolds he stated that "I had been in the area before and had seen the canal. I try to be careful when I am in the area." He reiterated in his deposition that he had been on the property many times, was aware of the condition of the property, and was aware of this particular canal. Because of Lechuga's knowledge of the area, which was crisscrossed by canals, roads, and piping, and dotted by settling and reclaim ponds, and Reynolds' lack of knowledge of any particularly dangerous condition, Reynolds had no duty to warn Lechuga of the condition of the property or to make it any safer. Neither did Reynolds have a duty to warn Lechuga of any conditions on the property. And if

that were not sufficient, in Lechuga's district court pleadings he failed to allege that Reynolds breached its duty of care as a licensor. Clearly, Lechuga cannot recover as a licensee.

## V.

## CONCLUSION

At the time of his injury, Lechuga was neither an invitee nor a trespasser; he was a mere licensee to whom Reynolds' only duty was to not injure him willfully, wantonly or through gross negligence. Because Lechuga did not allege that Reynolds failed in its duty of care as a licensor, and because Lechuga had knowledge of the condition of the Reynolds property, he cannot recover as Reynolds' licensee. Therefore, the district court properly granted summary judgment in favor of Reynolds. For the foregoing reasons, the judgment of the district court is

**AFFIRMED.**

---

**42.** We reject Lechuga's contention that this "no duty" rule was abrogated as to licensees by the Texas Supreme Court in *Parker v. Highland Park*, 565 S.W.2d 512 (Tex.1978). *Parker* involved an invitee, not a licensee. Furthermore, the Texas courts have consistently articulated the "no duty" rule in cases of premises liability to licensees decided after *Parker*. *See, e.g., Dominguez*, 746 S.W.2d 865; *Weaver*, 750 S.W.2d 24.