IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 96-20556

Summary Calendar
_____


GUOHU (KENNY) PENG

                              Plaintiff-Appellant

v.

SINO PAC INTERNATIONAL CORPORATION INC

                              Defendant-Appellee

_____

Appeal from the United States District Court
for the Southern District of Texas
(CA-H-94-1385)
_____

February 18, 1997

Before KING, SMITH, and EMILIO M. GARZA, Circuit Judges.

PER CURIAM:[*]

Guohu Peng appeals the district court's grant of summary judgment in favor of Sinopac International Corporation, Inc.. Finding no error, we affirm the judgment of the district court.

## I. BACKGROUND

A. *Procedural History*

---

[*]Pursuant to Local Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

1

Peng, a citizen of the People's Republic of China temporarily in the United States on a work visa, sued Sinopac, a Chinese owned and managed company, under Title VII of the Civil Rights Act of 1964[1] and for unspecified state law claims[2] on April 22, 1994. Peng alleged that Sinopac discriminated against him on the basis of national origin by paying him less than American employees in equivalent positions, and by generally denying him the same terms and conditions of employment as the American employees. Peng also claimed that Sinopac discriminated against him by harassing him and intimidating him because of his association with a white American woman, discouraging him from associating with her, and finally terminating his employment because of his association with her. The district court granted Sinopac's Motion for Summary Judgment. After Peng's attorneys withdrew from the case, Peng, proceeding pro se, filed a Motion for New Trial and a Motion to Vacate and Set Aside Judgment. The district court denied both motions. Peng, continuing pro se, appeals the judgment of the district court.

B. Statement of Facts

Except as noted, the following facts are drawn from Peng's affidavit, filed in response to Sinopac's motion for summary judgment, and from excerpts of his deposition testimony, offered

[1] 42 U.S.C. § 2000e-2000e-17, 42 U.S.C. § 1981.

[2] Peng's attorney informed the district court in a pretrial conference that there were no state law claims.

2

by Sinopac in support of its motion for summary judgment. Peng is a citizen of the People's Republic of China with a degree in electrical engineering. Peng was hired to work for the Chinese affiliate of Sinopac, a corporation owned by Frank Lin, as manager of Quality Control in March 1990. From January 1 through May 15, 1991, Peng was employed by the Mexican affiliate of Sinopac in Reynosa, Mexico as Chief Engineer and Quality Control Consultant.

Between May 15, 1991, and August 1, 1991, Peng worked at Sinopac's Cleveland, Texas plant on a B-1 visitor visa. On August 1, 1991, Peng obtained an H-1-B visa to work as Chief Engineer at the Sinopac plant in Cleveland. Since he lived in a company trailer on Sinopac premises, Sinopac asked him to check the plant at night when the alarm went off.

According to Patty Smith's deposition testimony, which Sinopac included in support of its motion for summary judgment, Patty Smith was an employee of Sinopac from September 1991 until September 1992. Peng and Smith started dating sometime around the end of 1991 or early 1992. Smith obtained a divorce from her husband of nine months at the end of February 1992. Shortly after Smith and Peng started dating, Smith and her three small children moved into the company trailer with Peng. During the time they lived together, Peng and Smith considered themselves to be common-law husband and wife, but they never told anyone at the management level or in the personnel department of Sinopac that

3

they were married.

Peng and Frank Lin had several communications regarding Peng's association with Smith. From these communications, Peng received the distinct impression that Lin thought it would be in Peng's best interest not to associate with or marry Smith, and that Lin was angry with Peng for not complying with Lin's wishes by disassociating himself from Smith.

On October 29, 1992, Peng received a fax from Lin in which Lin ordered him to transfer to China for a few months to help the Sinopac factory there. On October 30, Peng gave the required notice to take two weeks of vacation starting on November 9. The record contains a fax from Lin to Peng in which Lin instructs Peng to take his vacation from November 2 to November 13 and then return immediately to China "due the factory in China need your help to set up ISO 9000 QC System for BABT inspection." Lin concluded by saying, "Pl confirm by signing back this fax to me to have this arrangement in force." Peng received the fax but did not confirm it, as requested by Lin. Instead, Peng went to McAllen, Texas during his vacation to look for a new job. Peng accepted an offer from Michael London, a part owner of the Sinopac-affiliated Mexican factory.

On November 10, Lin sent a fax to Peng, with a copy to Wang, instructing Wang to arrange an airline ticket for Peng to return to China on November 14 as scheduled. On November 13, Wang inquired about Peng's schedule so that he could make the flight

4

reservation and informed Peng that "[a]s of Monday, November 16, 1992, your position will be to work at the China factory.  Before you leave here you can still come to the Cleveland factory to pick up your personal belongings."

On November 15, Peng returned to work at the Cleveland factory.  On November 19, Peng was informed that he was no longer an employee of Sinopac.

## II. DISCUSSION

*A. Standard of Review*

We review a grant of summary judgment de novo, applying the same criteria used by the district court.  Norman v. Apache Corp., 19 F.3d 1017, 1021 (5th Cir. 1994).  First, we consult the applicable law to ascertain the material factual issues.  King v. Chide, 974 F.2d 653, 655-56 (5th Cir. 1992).  We then review the evidence bearing on those issues, viewing the facts and inferences to be drawn therefrom in the light most favorable to the nonmoving party.  Lemelle v. Universal Mfg. Corp., 18 F.3d 1268, 1272 (5th Cir. 1994).  Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).

In an employment discrimination case, the court must engage in a burden shifting analysis. Under the Supreme Court's McDonnell Douglas framework, the plaintiff must first establish a prima facie case by a preponderance of the evidence. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Rhodes v. Guiberson Oil Tools, 75 F.3d 989, 992 (5th Cir. 1996)(en banc). The prima facie case raises an inference of discrimination. Rhodes, 75 F.3d at 992. The burden of production then shifts to the defendant to provide a legitimate nondiscriminatory reason for its employment action. Id. at 992-93. If the defendant meets its burden, the plaintiff has the opportunity to show that the rationale offered by the defendant was a mere pretext. Id. at 993. A plaintiff can avoid summary judgment "if the evidence taken as a whole (1) creates a fact issue as to whether each of the employer's stated reasons was what actually motivated the employer and (2) creates a reasonable inference that [national origin] was a determinative factor in the actions of which plaintiff complains." Rhodes, 75 F.3d at 994.

*B. Analysis*

Title VII provides in part:

It shall be an unlawful employment practice for an employer-

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . .

6

42 U.S.C. § 2000e-2. Peng claims that Sinopac discriminated against him on the basis of national origin on the following grounds: 1) his salary was not comparable to the salaries of American employees in equivalent, or even subordinate, positions; 2) he was refused vacation benefits that were not refused to other employees; 3) he was transferred to China because he requested a vacation and because he was associating with an American woman; 4) throughout his employment he was harassed, intimidated, and threatened with layoff or transfer if he did not cease associating with an American woman; and finally 5) he was wrongfully discharged because of his association with an American woman.

*1. Terms and Conditions of Employment*

In his brief on appeal, Peng objects to the documents introduced by Sinopac in support of its motion for summary judgment. Peng asserts that certain documents prepared by employees of Sinopac concerning his job-related misconduct were not business records admissible under Federal Rule of Evidence 803(6) because they were not made in the regular course of business but were prepared in anticipation of litigation. He also argues that the documents were not properly authenticated.

Although Peng raises these objections now, he failed to object to the evidence in his response to the motion for summary judgment. Peng did not point out with specificity what portions

7

of the record should be deemed inadmissible.  He neither pointed out the grounds upon which any of the documents were inadmissible nor cited any legal foundation for their inadmissibility.  We decline to review arguments that Peng failed to raise in response to Sinopac's motion for summary judgment.  <u>Williams v. Time Warner Operation, Inc.</u>, 98 F.3d 179, 183 (5th Cir. 1996).

Peng also argues on appeal that the district court erred in concluding that Peng had not raised a fact issue on whether he was paid equivalently to white American employees.  Peng states that the only evidence Sinopac offered was Peng's payroll record in 1992 and a summary of its salaried employees' personal information and rates of pay in 1992.  Initially, the summary was contained in the brief in support of the motion for summary judgment.  Later, Sinopac filed an affidavit of Flora Lin, the vice president of Sinopac and current custodian of the records, attesting to the accuracy of the summary.  Peng argues on appeal that the summary should not have been admitted into evidence because it was inadmissible under Federal Rule of Evidence 1006.  He did not raise this argument in the court below.

Ironically, although Peng insists that Sinopac's evidence should not have been admitted, Peng presented no evidence of the salaries of other employees to make his claim and chose to rely on the information presented by Sinopac.  Based on this evidence, Peng argues in his brief on appeal that his average pay was substantially less than that of the Foreign Trade Zone Manager,

the Personnel Manager, and the security officer.  Peng has produced no statistics that compare the average salary of various employees over a period of time.

Sinopac's evidence, upon which Peng relies, shows only the bi-weekly salary of various employees in 1992.  From this evidence, it is clear that after Peng was promoted to Assistant Plant Manager he was paid more than the Personnel Manager and the security officer.  It is also clear that after the Foreign Trade Zone Manager received a raise from $830 per pay period to $1,100 per pay period at some point during 1992, the Foreign Trade Zone Manager was paid more Peng, who was paid $875 per pay period from May through October 1992.  This single statistic alone, however, is not enough to create a genuine issue of material fact.

During the time that Peng worked at Sinopac, he received at least six raises, the latest of which increased his salary by $205 per pay period.  At the time his employment was terminated, Peng received more money than all of the white American salaried employees except for the Executive Vice President, the Controller in Houston, and the Foreign Trade Zone Manager.  The fact that Peng received a lower salary than three senior white American employees does not create a genuine issue of material fact as to whether Peng was discriminated against on the basis of national origin in light of the evidence that he was paid more than every other white American salaried employee at Sinopac.

Peng claims that he did not receive the same vacation

9

benefits as the white American employees.  Peng introduced no evidence that he ever attempted to take a vacation until November 1992.  At that time, he requested a vacation, and it was approved immediately.  Although Peng was never paid for his vacation time, Peng admits in his affidavit that he was told he would be paid for his vacation as soon as he arrived in China.  Peng never reported to work in China.

*2. Transfer and Termination*

Assuming, arguendo, that Peng established a prima facie case that Sinopac's attempt to transfer him and eventual termination of his employment discriminated against him on the basis of national origin, the burden then shifts to Sinopac to articulate a legitimate nondiscriminatory reason for its adverse employment actions.  Rhodes, 75 F.3d at 992-93.  In affidavits and deposition testimony in support of its motion for summary judgment, Sinopac provided two nondiscriminatory reasons for its decision to transfer Peng back to China and two nondiscriminatory reasons for its ultimate decision to terminate Peng's employment.

First, Frank Lin explained in his deposition that the factory in China was rushing to prepare for an inspection by the British Approval Board of Telecommunications.  As Peng was the former Quality Control Manager of that factory, Lin maintained that he wanted to transfer Peng back to China for several months to assist in the preparation for the inspection.

10

Second, as Flora Lin explained in her affidavit, the transfer made sense from the perspective of employee compatibility. She said the decision to send Peng to China was not finalized until complaints were received from Plant Manager Wang and the Executive Director regarding Peng's behavior and requesting his removal from the plant. In his deposition, Peng admitted getting into numerous arguments and fights with both Carolyn Slater, the Personnel Director, and Steve Wang.

Third, in her affidavit, Flora Lin states that "Peng's employment was not terminated until he failed to return to China for assignment as requested." According to an excerpt from the Sinopac Employee Policy, which was offered in support of Sinopac's motion for summary judgment, an employee may be terminated if he fails to report to work for three consecutive days. The excerpt was attached to an affidavit of Jack Patterson, the Contoller for Sinopac, who attested to its accuracy.

Fourth, Sinopac had a nondiscriminatory reason to object to Peng's relationship with Smith. In her affidavit, Flora Lin states that "Peng was not told that he could not associate with Patti Smith. However, he was told that only approved Company managers could live in the Company's trailer." Thus, Peng violated company rules by inviting Smith to live with him in a company-owned trailer on the company premises.

In articulating these reasons for its employment decisions, Sinopac met its burden of production. St. Mary's Honor Ctr. v.

11

Hicks, 509 U.S. 502, 509 (1993)("By producing evidence (whether ultimately persuasive or not) of nondiscriminatory reasons, petitioners sustained their burden of production."). Under the burden-shifting analysis, we now examine whether Peng has successfully demonstrated that Sinopac's articulated reasons for its employment decisions were merely a pretext for discrimination. Rhodes, 75 F.3d at 993.

In attempting to show that Sinopac's proffered reasons are a pretext used to disguise its discriminatory motive, Peng points to the communications between himself and Lin regarding his association with Smith. Clearly, Lin did not think it was a good idea for Peng to be involved with Smith. While Lin's continued involvement in Peng's personal life may have been inappropriate, evidence of that involvement does not negate the fact that Sinopac has offered several nondiscriminatory reasons for its employment actions.

Peng complains extensively about the treatment he received as an employee of Sinopac, but he produces nothing to refute Sinopac's reasons for its employment actions. He does not adduce any evidence to suggest that he was not needed immediately in China to help the factory there prepare for inspection. Although he objects to reports detailing his confrontational and hostile behavior prepared by Slater, Wang, and the security officer in December 1992, Peng admits in his deposition that he got in numerous arguments and fights with all three people.

12

Furthermore, Peng makes no attempt to challenge Sinopac's claim that he violated employee policies and that such violations can result in termination.  Peng adduces no evidence of any white Americans who behaved in a similar manner and were treated differently.  Peng's unsupported assertion that he was discriminated against on the basis of national origin and his testimony based on conjecture alone are insufficient to raise a fact issue to defeat summary judgment.  <u>Lechuga v. Southern Pacific Transp. Co.</u>, 949 F.2d 790, 798 (5th Cir. 1992).

## III. CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.