**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

**No. 00-30584**
_____

**Donald Gonzales,**

**Plaintiff-Appellant,**

**versus**

**J.E. Merit Constructors, Inc.,**

**Defendant-Appellee.**

_____

**Appeal from the United States District Court**
**for the Middle District of Louisiana**
**(98-CV-380)**
_____

June 8, 2001

Before REYNALDO G. GARZA, DAVIS, and JONES, Circuit Judges.

Edith H. Jones, Circuit Judge:[*]

This diversity case concerns Plaintiff-Appellant Donald
Gonzales's ("Gonzales") claim that he was terminated in retaliation
for reporting a dangerous mercury spill to his employer, Defendant-
Appellee J.E. Merit Constructors, Inc. ("Merit"). Holding that
Gonzales failed to create a genuine issue of material fact on all
elements of his prima facie case of retaliation, the district court

---

[*] Pursuant to 5th Cir. Rule 47.5, the court has determined that this
opinion should not be published and is not precedent except under the limited
circumstances set forth in 5th Cir. Rule 47.5.4.

granted Merit's motion for summary judgment. Because we agree with the district court that Gonzales has produced insufficient evidence to allow a reasonable jury to infer a causal connection between his report of the mercury spill and his subsequent termination, we now affirm.

Gonzales was employed as a "cherry picker" operator and "class B" mechanic by Merit for nearly eleven years before his termination on March 31, 1997. For approximately the last two years of his employment with Merit, Gonzales was assigned to work at the Pioneer Alkali Plant in St. Gabriel, Louisiana. This plant was owned by Pioneer Chlor Akali Co. ("Pioneer"), but pursuant to a contractual relationship, plant maintenance was performed by Merit. Aside from this maintenance contract, there was no corporate relationship between Merit and Pioneer.

The primary function of this Pioneer plant is to produce chlorine gas, caustic soda and hydrogen from salt water. Mercury is used in these processes. It is not uncommon for the employees to encounter mercury while servicing equipment at the Pioneer plant. The procedure to be followed by a Merit employee encountering mercury at the Pioneer plant is simple: the employee is to notify either of two Pioneer employees, Dana Oliver or Bob Winterton. Oliver is Pioneer's manager for environmental matters at the plant, while Winterton is charged with the handling and disposal of mercury spills. The reporting employee is also required to fill

2

out an internal spill report form.  Merit asserts, without contradiction in the record, that no employee has ever suffered adverse employment consequences as a result of reporting a mercury spill.

Gonzales discovered a large mercury spill in the hazardous waste storage area of the Pioneer plant on March 6, 1997. Gonzales notified his foreman Freddie Hebert, Merit's chief mechanic, who instructed Gonzales to inform Pioneer's Oliver, as per Merit's standard procedure.  Gonzales reported the spill to Oliver on March 7.  According to Gonzales, Oliver initially told Gonzales to clean up the mercury spill himself, but Gonzales replied that he was not qualified to do so.  Oliver then paged Winterton, Pioneer's mercury spill clean-up expert, and assured Gonzales that the spill would be taken care of.

It was after this conversation with Oliver that Gonzales asserts that Merit's treatment of him began to change.  Gonzales alleges that he was given unusual and dangerous tasks, that he was denied the opportunity to work overtime, and that he was not allowed to attend a scheduled meeting of the Plant Safety Committee on March 12, 1997.  Finally, on March 31, 1997, Gonzales was fired.

The decision to terminate Gonzales was made by Merit's two managers at the Pioneer plant, Ronnie Little and Robert Wascom. They claim that the termination decision was based on Gonzales'

3

poor job performance and the need to have his tasks performed by a more skilled "class A" mechanic. Wascom and Little assert that at the time they fired Gonzales they had no knowledge of his March 6-7, 1997 report of a mercury spill.

Suspecting that his termination was in retaliation for his spill report, Gonzales filed suit against Merit in Louisiana state court for a violation of the Louisiana Environmental Whistleblower Act, La. Rev. Stat. Ann. § 30:2027. The suit was removed to federal district court on diversity grounds. Merit moved for summary judgment, claiming that its decision makers were unaware of the mercury spill incident at the time of Gonzales' termination and therefore could not be retaliating for it. The district court granted judgment, as it agreed that Gonzales had not produced sufficient evidence to create a genuine issue of material fact regarding the connection between the spill report and his termination. This appeal followed.

## Standard of Review

This court reviews the grant of summary judgment de novo, applying the same standard as the district court. Lechuga v. Southern Pacific Transportation Co., 949 F.2d 790 (5th Cir. 1992). The record and inferences are viewed in the light most favorable to the nonmovant. Walters v. City of Ocean Springs, 626 F.2d 1317 (5th Cir. 1980). The party moving for summary judgment must "demonstrate the absence of a genuine issue of material fact, but

4

need not negate the elements of the nonmovant's case." <u>Little v. Liquid Air Corp.</u>, 37 F.3d 1069, 1075 (5th Cir. 1994) (internal quotations and citations omitted). If the movant meets this burden, the nonmovant must go beyond the pleadings to designate specific facts, as opposed to general allegations, to show a genuine issue of material fact worthy of trial. <u>See</u> <u>id.</u>; <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555 (1992); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 321-23 (1986).

## Discussion

Gonzales argues that he established the elements of a prima facie retaliation claim. The district court found, however, that Gonzales had failed to designate specific facts creating a genuine issue for trial on all elements of his prima facie case of retaliation.

A prima facie case under the Louisiana Environmental Whistleblower Act includes three elements: (1) that the employee engaged in a protected activity; (2) that an adverse employment decision followed; and (3) that a causal connection between the two existed. <u>See</u> <u>Powers v. Vista Chemical Company</u>, 109 F.3d 1089, 1095 (5th Cir. 1997). <u>See</u> <u>also</u> <u>Grizzle v. Travelers Health Network, Inc</u>. 14 F.3d 261 (5th Cir. 1994) (outlining the three-part prima facie case for retaliation in the ADEA context); <u>Jones v. Flagship Int'l</u>, 793 F.2d 714, 724 (5th Cir. 1986) (describing a similar prima facie case under the retaliation provision of Title VII).

5

Gonzales satisfied the first two prongs of the retaliation test: he engaged in a protected activity by reporting the mercury spill and was subsequently fired. Both sides agree that Gonzales reported the mercury spill to his immediate supervisor, chief mechanic Freddie Hebert, and both parties acknowledge that Gonzales was terminated on March 31, 1997.

In question is whether Gonzales has presented sufficient evidence to survive summary judgment on the third prong of his prima facie case, the existence of any causal connection between his report of the spill and his termination. Under the Louisiana Environmental Whistleblower Act, an employee's failure to show that his protected actions motivated the employer's termination decision is fatal to his claim. See Powers, 109 F.3d at 1096. Obviously, an employer cannot retaliate against an employee for engaging in a protected activity that it did not know about at the time of the challenged action. Watts v. The Kroger Company, 170 F.3d 505, 512 (5th Cir. 1999); Robertson v. Bell Helicopter, 32 F.3d 948, 952 (5th Cir. 1994); Grizzle v. Travelers Health Networks, Inc., 14 F.3d 261, 267 (5th Cir. 1994). The knowledge of the primary employment decision makers within the company is relevant for this analysis. Grizzle, 14 F.3d at 267-68.

Gonzales had to offer evidence creating a genuine issue of material fact that Wascom and/or Little, Merit's employment decision makers at the Pioneer plant, were aware of his mercury

spill report at the time that they terminated him. As Gonzales concedes, there is no such direct evidence. Gonzales himself did not inform Wascom or Little. The only Merit employee that Gonzales did inform about the spill was Frank Hebert, a non-management worker with no input into employment decisions. Hebert, in turn, did not talk to Little or Wascom about the mercury spill. The only other person to whom Gonzales reported the spill was Dana Oliver, Pioneer's environmental compliance director. Oliver asserts that she has no recollection of Gonzales' spill report and that she did not talk to Wascom or Little about it. Nor would it have been standard practice for Oliver to report a mercury spill to Merit's managers: mercury spills at the Pioneer plant are Pioneer's responsibility, and Merit employees are responsible only for reporting the spills they encounter. Gonzales also failed to produce any document, such as an entry in Dana Oliver's spill log or any sort of spill report, evidencing that Wascom or Little were aware of this spill.

Lacking any semblance of direct evidence that Wascom or Little was aware of his protected activity, the mercury spill report, Gonzales instead presented four pieces of circumstantial evidence. However, even taken together, Gonzales' circumstantial evidence would not permit a reasonable jury to draw the required connection between his termination and Merit's decisionmakers' knowledge of the spill report.

7

Gonzales asserts that he was "treated differently" and given "onerous and unusual" tasks by the Merit managers after his spill report. Two incidents illustrate this different treatment. First, Gonzales was asked to participate in the removal of a heavy fiberglass cover. But this assignment was self-evidently not punitive, as supervisor Little, a foreman and two other Merit employees also participated in moving the bulky object.

In the second incident of "different" treatment, Gonzales, a member of the plant's safety committee, was required to miss a committee meeting on March 12, 1997. However, a reasonable and uncontradicted explanation exists for requiring Gonzales to miss the meeting. Both "clarifier units" at the Pioneer Plant were inoperable on the day in question, and a cherry picker crane was required to repair these units. Merit considered the rapid completion of these repairs essential and classified the event as a "hot job" requiring workers, including Gonzales, to remain on the job. Id. Company policy required workers to remain on site at "hot jobs" until complete. Gonzales contests neither the existence of this policy nor the fact that he operated a cherry picker for this particular "hot job." Additionally, the record indicates that only eight of seventeen committee members were present for this meeting, so Gonzales was not singled out for exclusion.

8

Since the foregoing examples simply do not prove his point about mistreatment, Gonzales' statement is merely self-serving, and it is well-established that a self-serving statement from a party, even if sworn, is not sufficient summary judgment evidence. See Southern Concrete Co. v. U.S. Steel Corp., 535 F.2d 313 (5th Cir. 1976); Curl v. IBM, 517 F.2d 212 (5th Cir. 1975).

Gonzales next alleges that he was assigned little overtime after his spill report. Gonzales was only asked to work one night of overtime between his spill report and his termination, and he claims that this was an abnormally low amount. But the record does not indicate whether other employees received overtime during this three week period, nor does the record show how much overtime Gonzales usually worked in a given week or month. In the absence of comparative information, Gonzales' contention that he was singled out for reduced overtime has no probative value and does not help him to withstand summary judgment.

Gonzales also emphasizes the close temporal proximity between his spill report and subsequent termination. He invokes cases from various jurisdictions, all standing for the proposition that "discharge soon after protected activity is indirect proof of causal connection" in a retaliation claim. See, e.g. Rath v. Selection Research, Inc., 978 F.2d 1087, 1090 (8th Cir. 1992). This Circuit has also held that temporal proximity of termination

9

can support an inference of causal nexus. <u>See</u> <u>Armstrong v. City of Dallas</u>, 997 F.2d 62, 67 (5th Cir. 1993). Unfortunately for Gonzales, all of these cases are inapplicable to the present situation because in each of them it was undisputed that the decision makers were aware of the employee's protected activity. Gonzales has cited no temporal proximity cases in which the decision maker did not know about the employee's protected activity.

Moreover, this court has cautioned that a short interval between the protected activity and the alleged retaliation is "not necessarily a determinative factor" in a retaliation claim. <u>See</u> <u>Mayberry v. Vought Aircraft Co.</u>, 5 F.3d 1086, 1092 (5th Cir. 1995). It is therefore important not to assign excessive weight to temporal proximity. Allowing an inference of retaliation from temporal proximity where the employer clearly knows of the protected activity is reasonable, but permitting the jury to infer *both* knowledge of the activity and retaliation for it creates too attenuated an inferential chain.

The final pieces of circumstantial evidence relied upon by Gonzales in his effort to show that Little and/or Wascom knew about his mercury spill report are the inconsistencies in Merit's explanation as to why he was terminated. Gonzales claims that Merit's first stated reason for dismissing him, referring to a

10

"reduction in force," was pretextual, since a replacement mechanic, albeit one with an "class A" rating rather than Gonzales' "class B," was almost immediately hired. Merit's verbal explanation of the termination differs from the written separation notice, however, asserting that Gonzales was fired because of his poor job performance and the need to upgrade to a more skilled "class A" mechanic in his position. Merit attributes the separation notice's "reduction in force" explanation to the supervisors' desire to allow him to find work quickly at another Merit job site.[1] Whatever one might think of the consistency or inconsistency of these explanations, there is no evidence nor can one infer that these minor inconsistencies mask an intent to retaliate against Gonzales or acknowledge the decision-makers' knowledge of his spill report.

Gonzales invokes <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133, 120 S.Ct. 2097 (2000), for the proposition that a plaintiff's prima facie case, combined with sufficient evidence for a reasonable factfinder to reject the defendant employer's nondiscriminatory explanation for its decision, may be adequate to sustain a finding of intentional discrimination, or in this

---

[1]An in-house policy at Merit allows an employee terminated in a reduction of force to apply for work immediately on another Merit job site. Employees terminated for other reasons must wait at least 30 days to be rehired.

11

instance retaliation. However, Gonzales misapprehends the applicability of Reeves to his situation. Reeves is premised on the plaintiff's first establishing his prima facie case. Reeves, 120 S.Ct. at 2109. Citing earlier discriminatory treatment cases, Reeves reiterates that "[f]irst, the plaintiff must establish a prima facie case of discrimination." Id. at 2106. Reeves is not relevant until all elements of the prima facie case have been established.

Gonzales has been unable to produce any direct or circumstantial evidence which would allow a reasonable jury to infer that the Merit decision makers even knew about his report of the mercury spill. Lacking any evidence of a causal connection between his spill report and termination, Gonzales has failed to make out a prima facie case of retaliation. The district court's grant of summary judgment is therefore **AFFIRMED**.