# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**
June 22, 2012

No. 12-30031
Summary Calendar

Lyle W. Cayce
Clerk

CHUCK STYRON

Plaintiff-Appellant

v.

STATE FARM FIRE & CASUALTY COMPANY

Defendant-Appellee

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 2:10-CV-1729

Before DENNIS, CLEMENT, and OWEN, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Chuck Styron sued State Farm Fire and Casualty Company ("State Farm") for its failure to pay his homeowner's claim for damages to his home's roof and interior, incurred during Hurricane Ike. The district court granted summary judgment in favor of State Farm. Styron appeals the judgment. We AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-30031

## I. FACTS AND PROCEEDINGS

Styron owns a residence located at 321 Peake Street in Lake Charles, Louisiana. This property was insured by State Farm. On September 13, 2008, Hurricane Ike made landfall near Galveston, Texas, which is located approximately 120 miles to the southeast of Lake Charles. Hurricane Ike caused significant winds and flooding in Texas and Louisiana. On March 16, 2009, after several days of rain, Styron reported to his State Farm agent that a roof leak caused damage to the interior of his home. The following day, a State Farm claims representative, William Cain, contacted Styron, who reported that his roof was missing several shingles and that the ceilings of several rooms in his home had begun to leak. On March 19, 2009, Cain inspected the home and found that several shingles were missing and would require repair. During this inspection, Styron told Cain that after four days of rain during the week of March 9-14, water leaked in and damaged the ceilings in his TV room, dining room, guest bedroom, and kitchen. Cain found that several slate tiles on the roof had come off their wiring. After inspecting Styron's home, Cain determined that the house had not suffered hurricane damage and moved the claim to "zone" for handling as a non-hurricane claim.

The case was reassigned to another claims representative, Stephen Laughlin, who conducted a second inspection on March 20, 2009. Laughlin identified four loose asbestos shingles on the roof and four damaged ridge caps. Laughlin determined that most of the interior damage was the result of long-term damage and caused by age, settlement, or poor workmanship. Laughlin also found fresh water spots that were not located near the long-term damage. Laughlin determined that the loose shingles and ridge caps could be attributed to the wind, and prepared an estimate for the repair of the four shingles, four ridge caps, and for the repair of the fresh water spots. State Farm issued

payment of $499.80, which covered the cost of the repairs, less depreciation and the policy deductible.

Styron hired Rhino Rhenovators to provide an estimate to repair the damage to his home. Rhino Rhenovators sent its estimate— $9,385.00 to repair Styron's damaged roof, ceiling, and floors—to State Farm. State Farm then conducted another inspection on June 12, 2009, accompanied by Rhino Rhenovators. Rhino suggested that wind had lifted the house's flat roofing, which allowed water to enter the house. However, the State Farm agent pointed out that the flat roofing was still nailed down and that the nails could not have lifted and then driven themselves back in. According to the State Farm agent, the Rhino Rhenovators contractor "understood." State Farm again determined that it did not owe Styron any additional payment.

State Farm then engaged Poole Engineering to provide a professional determination as to the cause of the damage. Poole conducted its inspection on June 24, 2009 and issued its report on August 25, 2009. The report identified points of damage in the house and on the roof, and ultimately concluded that the water stains occurred over a long period of time on a repeated basis, and were caused by insufficient insulation of ducts and air conditioning grills, and by insufficient insulation of the spaces between the ceiling and the second floor and between the ceiling and the attic. Poole also concluded that the floor buckling was caused by exposure to excessive moisture that came from under the residence, and that the moisture barrier breached because of normal long-term movement of the finished floor relative to the subfloor; normal aging of the roofing paper used for the moisture barrier; and excessive downward settlement of the sub-structure, which caused the roofing paper moisture barrier to stretch, tear, or separate. After receiving the report, State Farm again determined that Styron was not due any additional payments.

No. 12-30031

In July 2010, Cal Chambers, a consultant hired by Styron, inspected Styron's house. He submitted a damage assessment report, estimating the damages at $204,717.78. Chambers' report did not identify any cause of the estimated damages. State Farm also engaged Ribbeck Construction Corporation to conduct an independent evaluation to determine the cause of the damage to Styron's home. After an initial visit, Ribbeck conducted three separate inspections of the house. He concluded that there was "no evidence of roof damage that would be caused by severe weather . . . . The roofs, both asbestos shingle and built up roofs and all associated flashings are past their life cycle and are in need of replacement."

Styron filed suit against State Farm on September 14, 2009, claiming that his roof needed to be replaced as a result of Hurricane Ike, and that water invading the home through roof leaks caused interior damage that required repair. He also claimed that pursuant to La. Rev. Stat. § 22:1220 and La. Rev. Stat. § 22:658, State Farm breached its good faith duty in failing to timely and adequately adjust Styron's claim. Styron later filed a supplemental and amended complaint, asserting the same claims and in addition claiming that State Farm's inspections further damaged his roof. State Farm filed a motion for summary judgment, which the district court granted. Styron now appeals.

## II. DISCUSSION

### A. Standard of Review

We review a district court's grant of summary judgment de novo, applying the same standard as the district court. *Addicks Servs., Inc. v. GGP-Bridgeland, LP*, 596 F.3d 286, 293 (5th Cir. 2010). Summary judgment is appropriate if the record shows that "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In reviewing a grant of summary judgment, we examine the evidence in the light

4

most favorable to the nonmoving party. *Addicks Servs., Inc.*, 596 F.3d at 293. The moving party bears the burden of demonstrating that summary judgment is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the nonmoving party would bear the burden of proof at trial, the moving party may meet its burden by showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. Once the moving party has made this showing, the burden shifts back to the nonmoving party "to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324; *see also Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985). While "any reasonable inferences are to be drawn in favor of [the nonmoving] party," *Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503, 507 (5th Cir. 2003), conclusory allegations and unsubstantiated allegations alone are insufficient to defeat summary judgment. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

## B. Insurance Claim

We conclude that summary judgment was appropriate. Styron's homeowner policy provides coverage for "accidental direct physical loss to the property described in Coverage A, except as provided in SECTION I–LOSSES NOT INSURED." This policy provided coverage for wind damage, but did not provide coverage for poor workmanship; wear, tear, deterioration, or latent defect; settling, cracking, or expansion of walls, roofs, or ceilings; or leakage of water from air conditioning systems, household appliances, or plumbing. "Under Louisiana law, the insured must prove that the claim asserted is covered by his policy. Once he has done this, the insurer has the burden of demonstrating that the damage at issue is excluded from coverage." *Dickerson v. Lexington Ins. Co.*, 556 F.3d 290, 295 (5th Cir. 2009). To warrant summary judgment, State Farm must demonstrate that Styron would not be able to meet this initial burden of

proof at trial. Viewing the evidence in light most favorable to Styron, we conclude that there was no evidence that the damage to Styron's roof and interior was caused by wind and thus covered by his policy.

Styron presented Rhino Rhenovators' repair estimate and Cal Chambers' loss estimate. Neither estimate provides an explanation as to the cause of the damage. When a Rhino Rhenovators' contractor inspected the home with a State Farm agent, the contractor theorized that wind lifted the flat roofing of the house and allowed rain in, he was told that nails were still attached to the decking of the roof and that the roof could not have been lifted by wind and then nailed itself back in. In his deposition, Cal Chambers testified that the source of the water damage inside the house appeared to be from the roof, but that he could not identify the cause of the damage to the roof. Styron testified that the problems with his roof got worse after Hurricane Ike. He presented no other evidence as to the cause of the damage to his roof and interior.

There is significant evidence that the only damage that might have been caused by wind was the four loose asbestos shingles, four damaged ridge caps, and a fresh interior water spot, for which State Farm has already rendered payment. Two State Farm claims representatives, Cain and Laughlin, inspected the home on separate occasions, and neither found Hurricane-related damage, other than the four loose shingles, four ridge caps, and the fresh interior water spot. Laughlin then inspected the property again, with a Rhino Rhenovators contractor, and determined that the repairs estimated by Rhino Rhenovators were for damage caused by wear and tear, lack of maintenance, or workmanship issues. State Farm also engaged Poole Engineering for the purpose of determining the cause of the damage to the home. Poole concluded that there was no wind-caused damage to the residence, and attributed the damage to issues relating to age-related deterioration, condensation from the sprinkler and air conditioning systems, and workmanship issues. State Farm then engaged

No. 12-30031

Edward Ribbeck to conduct an independent inspection of the property. Ribbeck concluded that the damage was not caused by severe weather, and instead determined that the roof was past its life cycle and needed replacement. He also found that many of the water stains inside the house were not related to the roof damage. Ribbeck and Poole are the only expert opinions in the record regarding causation; Chambers did not testify as an expert and he did not testify as to causation.

The only evidence in the record supports the conclusion that the damage to the house—other than the damage for which State Farm has already issued payment—was not caused by wind and was not covered by Styron's insurance policy. Therefore, State Farm was entitled to summary judgment on Styron's insurance claims.

### C. Claim for Damages Caused by Home Inspection

State Farm also was entitled to summary judgment on Styron's claim that the damage to his residence was aggravated when a State Farm inspector walked on his roof during an investigation. Styron testified that he noticed more leaking after State Farm conducted its roof inspection and "assume[d]" that further damage was caused by the inspector walking across the roof.  There is no other evidence in the record to support this claim. "[T]estimony based on conjecture alone is insufficient to raise an issue to defeat summary judgment." *Lechuga v. Southern Pac. Transp. Co.*, 949 F.2d 790, 798 (5th Cir. 1992). Viewing the evidence in the light most favorable to Styron, we conclude that there is no genuine issue as to whether the damage to the roof was exacerbated by the inspection.

### D. Breach of Good Faith Claim

Because Styron was not entitled to additional insurance payments for the damage to his home's roof and interior, he cannot establish that he is entitled to

7

No. 12-30031

damages under La. Rev. Stat. § 22:1973.[1] The statute provides that any insurer who breaches his "duty of good faith and fair dealing" or fails to "adjust claims fairly and promptly [or] to make a reasonable effort to settle claims . . . . shall be liable for any damages sustained as a result of the breach." La. Rev. Stat. § 22:1973. Styron claims that State Farm breached its good faith duty to timely and adequately adjust his claim. State Farm conducted its first inspection of the house three days after Styron filed his insurance claim, and a second inspection the following day. State Farm provided Styron with payment for the covered damages, along with a partial denial and covered damages letter, less than one month after Styron first filed his claim. There is no evidence that State Farm breached its duty of good faith with regard to the covered damages. Because we conclude that there is no genuine issue of material fact for trial as to whether State Farm owes additional payment for the remaining damages, we further conclude that State Farm cannot be held liable for penalties and attorney fees under this statute.

### III. CONCLUSION

We AFFIRM the district court's grant of summary judgment.

---

[1] Styron's Petition for Damages claims that he is entitled to damages under La. Rev. Stat. § 22:1220, which is the former citation of La. Rev. Stat. § 22:1973.