Ruth PRESTWOOD, Appellant,

v.

Vince F. TAYLOR, Appellees.

No. 3–86–101–CV.

Court of Appeals of Texas, Austin.

April 15, 1987.

Rehearing Denied May 13, 1987.

Malcom C. Smith, Marc O. Knisely, McGinnis, Lochridge & Kilgore, Austin, for appellant.

Jack C. Eisenberg, Byrd, Davis & Eisenberg, Austin, for appellees.

Before POWERS, GAMMAGE and CARROLL, JJ.

POWERS, Justice.

Ruth Prestwood appeals from a trial-court judgment awarding Vince Taylor $52,514.55 in compensatory damages for injuries he sustained when he fell on a freight elevator situated on premises owned by Prestwood. The judgment rests solely on the trial court's determination that Prestwood was negligent in failing to *discover* the dangerous condition of the elevator. We conclude the evidence is insufficient to establish any circumstances giving rise to such a duty on Prestwood's part. We shall therefore reverse the judgment below and render judgment that Taylor take nothing by his suit.

## THE CONTROVERSY

Prestwood owned a two-story building in Austin, Texas. In May 1980, she leased to a tenant that part of the building which housed a freight elevator serving the two levels. The lease contract was in writing. In the late spring of 1981, the tenant began to suffer financial problems. He ceased paying Prestwood the agreed rentals and failed to pay other creditors as well. Several of the tenant's other creditors obtained against him a judgment which included an order directing the sale of certain of the tenant's personal property in which the creditors had a security interest. In execution of the order, the sheriff on May 27, 1981, secured the contents of the leased premises, in preparation for the sale, by changing the locks on the doors. About the same time, Prestwood obtained against the tenant a judgment in an action for forcible entry and detainer, brought by her to regain possession of the leased premises following notice to the tenant that she elected to terminate the lease for his failure to pay rent. Tex.Prop.Code Ann. §§ 24.001–.008 (1984); Tex.R.Civ.P.Ann. 738–55 (1967 & Supp.1987). Writs of execution and restitution were issued June 2, 1981 in enforcement of this judgment. They were returned *nulla bona*, however, because the serving officer evidently determined they could not be executed owing either to the locks placed on the premises by the sheriff or the bankruptcy proceedings now to be described.

In late May or early June 1981, the tenant filed a bankruptcy proceeding in federal court. On June 4, 1981, the federal court appointed Taylor trustee for the bankrupt estate. Following his appointment, Taylor made several visits to the leased premises. In a visit on July 10, 1981, while on the second floor, Taylor stepped onto a "lift" or freight elevator. It gave way under him and he fell to the first floor. In the fall, Taylor sustained abrasions, a broken ankle, and a dislocated shoulder. Taylor sued Prestwood, contending her negligence was a proximate cause of his injuries.

## THE TRIAL–COURT JUDGMENT

Following a trial before the court without a jury, Taylor obtained judgment awarding him $52,514.55 in compensatory damages. The trial court made findings of fact and conclusions of law in support of the judgment. The relevant parts thereof may be summarized as follows:

1. "Prestwood was an owner and occupier of the premises."
2. Prestwood knew of the dangerous condition of the elevator or should have discovered it by a reasonable inspection.
3. Prestwood failed to exercise reasonable care to reduce or eliminate the risk or warn of its existence.
4. Taylor was on the premises in his official capacity as a trustee in bankruptcy.
5. Taylor's presence on the premises in his official capacity "was of mutual aid to both" Taylor and Prestwood because she was "a creditor of the bankrupt."
6. Taylor "was a business invitee" to whom Prestwood owed "a duty of ordinary care" which she breached.

The meaning of these determinations becomes clearer when considered in light of the record. They reflect ultimately a trial-court theory that Taylor was the "business visitor" of Prestwood who was a "possessor" of the leased premises; and, in consequence, she owed him a duty to inspect the

leased premises in order to discover the dangerous condition, then a further duty either to warn of the danger or repair the elevator in order to make the premises reasonably safe for Taylor's visit. We infer this meaning from the following portions of the record.

■ First, it is not shown by any evidence of record that Prestwood *actually* knew or had reason to know of the dangerous condition of the elevator. Indeed, the following testimony stands uncontradicted in the evidence: Prestwood's husband stated that he used the elevator in cleaning the building just before the tenant took possession; the tenant's business partner testified that the elevator broke just before the lease was terminated; and Prestwood testified she never entered the premises during the lease or thereafter. There is no evidence that anyone ever communicated to Prestwood any information from which she might conclude that the elevator was in a dangerous condition. Consequently, it is also undisputed that she never discovered the dangerous condition of the elevator and did not, of course, repair it or warn Taylor of the danger.

■ Next, there is no evidence that the premises were held open to the public in the legal sense necessary to create a duty in favor of "public invitees." One in possession of premises may, of course, hold them open to the public for pecuniary gain (as in the case of a groceryman selling to the public) or not (as in the case of an auditorium used free of charge for a free public concert). Irrespective of whether a pecuniary benefit may result from the presence of visitors on such premises, the law holds that the simple act of holding the premises open to the public implies a representation by the possessor that they are reasonably safe for such visitors, which entails a duty to make them so by inspection and repair or warning. *See generally,* Prosser, Law of Torts § 61, at 388–89 (4th ed. 1971). Because no evidence suggests that the premises here involved were held open to the public, however, the trial court's judgment cannot rest upon such a theory.

The trial court's findings of fact and conclusions of law suggest rather explicitly that the judgment against Prestwood rests upon the "business visitor" theory under which Taylor was an invitee to whom Prestwood owed the duty to make the premises reasonably safe for his visit, and the attendant duty to make them so by inspection and repair or warning. We infer as much from the trial court's use of the expression "business invitee" and its determination that Taylor's presence on the premises was of "mutual aid" to Taylor (as bankruptcy trustee) and Prestwood (as a creditor of the bankrupt).

■ The theory holds that a possessor may, in certain circumstances, be charged with a duty to make the premises reasonably safe for visitors who enter thereon for business purposes, even though the premises are *not* held open to the public generally. An example is found in the case of a salesman who comes into a factory to offer his wares for the owner's purchase. The theory originally held that the possessor incurred the duty when his words or conduct amounted to an *invitation* that visitors enter the premises for business purposes, even though they were not held open to the public generally. From the invitation, the law implied a representation that the premises were reasonably safe for such visitors. The theory changed, however, to hold that the possessor incurred the duty when he (1) merely *consented* to the visitor's entry and (2) the visitor's presence gave rise to at least a potential pecuniary benefit to the possessor. When these two elements were shown by the evidence, the law implied the duty owed invitees—the duty to render even private premises reasonably safe for such visitors, with the attendant duty to make them so by inspection and repair or warning. Prosser, *supra,* 385–89; 5 Harper, James & Gray, *The Law of Torts* § 27.12, at 218–30 (2d ed. 1986). In modern times, the majority of jurisdictions and the Restatement (Second) of Torts have evidently settled upon a "business visitor" theory that (1) requires words or conduct by the possessor amounting to an *invitation* but (2) diminishes the

factor of pecuniary benefit to mere "business dealings" with the possessor. Prosser, *supra*, at 389; 5 Harper, James & Gray, *supra*, at 221–22; Restatement (Second) of Torts § 332(3) (1965). Both an invitation and a direct pecuniary benefit are yet required in Texas. *Olivier v. Snowden*, 426 S.W.2d 545, 550 (Tex.1968).

■ The theory of the judgment being thus made clear, we may now consider Prestwood's points of error on appeal. She contends first that the evidence is legally and factually insufficient to support the trial court's determinations on those elements necessary for Taylor to recover on a theory that he was a "business visitor." She refers to the trial court's express and implied findings that: (1) Prestwood was a possessor of the premises upon whom the law placed the duties essential to a negligence action for injuries resulting from the condition of the premises; (2) Taylor entered the premises by her invitation; and (3) his entry was for her pecuniary benefit. All three are essential to the theory and unless *each* be established, the law would not imply that Prestwood owed Taylor a legal duty to make the premises safe for his visit, with the attendant duties of inspection and repair or warning. Prestwood assigns as additional error the trial court's failure to find that the dangerous condition of the elevator was open and obvious. Because we agree with her on her first contention, however, we need not address the latter point of error. *But see Parker v. Highland Park, Inc.*, 565 S.W.2d 512 (Tex. 1978).

We first consider whether the evidence is insufficient, under the applicable rules of law, to support the trial court's determination that Prestwood held the legal status of "possessor" of the premises at the time of Taylor's injury. This status is essential to *any* legal duty to visitors which might serve as a basis for the judgment that Prestwood was negligent. Thereafter, we shall assume for the purpose of discussion that this legal status *could* validly be imputed to Prestwood under the circumstances shown by the evidence, and we shall then inquire whether the evidence is legally

or factually insufficient to support the trial court's findings on the elements necessary to clothe Taylor with the legal status of "business visitor" to whom the duty of inspection was owed. If the evidence is insufficient to support the determination that Prestwood was a "possessor" or that Taylor was a "business visitor," then the judgment must fall because it rests on no other basis.

## PRESTWOOD'S STATUS AS "POSSESSOR" OF THE PREMISES

The judgment, as mentioned previously, allows recovery on a theory of negligence. Like any plaintiff who brings an action for negligence, Taylor was required to adduce evidence that his injury occurred in circumstances under which the law would place upon Prestwood a legal duty toward Taylor, along with other evidence that she breached her duty and proximately caused the injuries Taylor sustained. *Abalos v. Oil Development Co. of Texas*, 544 S.W.2d 627 (Tex.1976); *Coleman v. Hudson Gas & Oil Corp.*, 455 S.W.2d 701 (Tex.1970).

■ In the present case, the duty in question may not be imputed to Prestwood unless the evidence shows that she was a "possessor" of the premises wherein the elevator was situated. Restatement (Second) of Torts §§ 342 and 343. The word "possessor" has a technical meaning in this context. Prestwood would not necessarily be a "possessor" of the premises, upon whom liability could be predicated, owing to the fact that she held legal title to the premises or the legal right to immediate possession. *Cameron County v. Velasquez*, 668 S.W.2d 776 (Tex.App.1984, writ ref'd n.r.e.); *see also Hernandez v. Heldenfels*, 374 S.W.2d 196 (Tex.1963). Instead, the legal status of "possessor" is a conclusion inferred from certain other underlying facts that must themselves be proved. These are set out in § 328E of the Restatement, which defines "possessor" as any of the following:

(a) a person who is in occupation of the land with intent to control it, or

(b) a person who has been in occupation of the land with intent to control it, if no other person has subsequently occupied it with intent to control it, or

(c) a person who is entitled to immediate occupation of the land, if no other person is in possession under clauses (a) and (b).

Taylor was bound to adduce evidence as to all the essential elements of one of the foregoing definitions in order that the trial court might validly determine that Prestwood was a "possessor" of the premises.

■■■ It is undisputed that Prestwood, by her lease to the tenant, transferred to him the right of possession and he entered into actual occupation of the land, for an extended period, with an intent to exercise the right of control given him in the lease contract. Except for circumstances not material here, a lessor's liability for dangerous conditions on the premises terminates with such a transfer of possession to the lessee. Restatement §§ 355 and 356. It being undisputed that the tenant occupied the premises with an intent to control them, Prestwood may not be held a "possessor" under § 328E(b). And, as we shall see, Taylor's judicial admissions determine as a matter of law that he claimed the right of immediate occupation of the premises, which precludes the possibility that Prestwood might be a "possessor" under § 328E(c), for the right of possession is indivisible. 1 Tiffany, *Real Property* § 94, at 143 (3d ed. 1939). We are left then to determine whether the evidence is insufficient to show the elements of § 328E(a)— that Prestwood occupied the land with intent to control it.

The "control" referred to in § 328E(a) is physical control or control in a factual sense, as indicated in the accompanying comment *a*. When one in occupancy of real property exercises such control with a proprietary attitude of mind, he is said to be in "possession" of the property. 2 *American Law of Property* § 8.1, at 228 (1952); 1 Thompson, *Real Property* § 24, at 110 (1980). After the premises were locked by the sheriff on May 27, 1981, in order to secure the contents for a judicial sale, Prestwood obtained a key to the premises. The particulars of her acquisition of the key are disputed in the evidence. That she had the key, and thus shared with Taylor the means of controlling access to the premises, is undisputed. It is also undisputed that Prestwood's real estate agent used the key when he entered the premises to show them to prospective new tenants. Finally, it is undisputed that a key was delivered to Taylor in order that he might have access to the premises for his purposes. This is all the evidence from which the essential elements of Prestwood's occupancy and intent to control may be inferred. We may look only to this favorable evidence in evaluating Prestwood's "no evidence" point of error. *Renfro Drug Co. v. Lewis*, 149 Tex. 507, 235 S.W.2d 609 (1950).

We are not satisfied that there is *no* evidence relative to the two essential elements of occupancy and intent to control. That Prestwood's real estate agent showed the premises is at least some evidence of her occupation of it; that she possessed a key to the otherwise inaccessible premises is some evidence that she intended to control access to them, even though that control was shared with Taylor. We therefore overrule Prestwood's contention that there is *no* evidence concerning these two essential elements.

We turn then to Prestwood's alternative contention that the trial court's implied findings, favorable to Taylor, on the two requisite elements of occupation and intent to control, are not supported by factually sufficient evidence when considered in light of all the evidence adduced thereon. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951). We conclude Prestwood must prevail on this point of error. In their testimony, both Prestwood and Taylor agreed in substance that Prestwood delivered the key to Taylor, so that he might control access to the premises, under a belief that Taylor was legally entitled to that control by virtue of his official position as bankruptcy trustee. Taylor testified that he did not object to Prestwood's having a key even though he ordinarily required that all keys to a bankrupt's rented premises be turned over to him because he was, in his view, the only person legally

entitled to control access to such premises until the bankruptcy court directed otherwise. He testified that he had not previously permitted the lessor of leased premises to retain a key, but he did so in Prestwood's case because her father was his friend. He insisted, however, that he possessed the legal right and power to compel her at any time to surrender all keys to the premises. There was testimony that two other individuals entered the premises, under *Taylor's* authority and permission, in order to remove their personal property.

One is compelled by such evidence and Taylor's judicial admissions (he never contradicted or explained them in a way that would diminish in any respect his asserted superior right and intention to control the premises) to conclude that *he* unquestionably occupied and exercised physical control over the premises to a degree at least equal if not superior to any imputable to Prestwood. By doing so, *he* assumed the duties of a possessor. 62 Am.Jur.2d *Premises Liability* § 14, at 242–43 (1972). We doubt he may recover for breach of a duty he thus owed himself, with regard to the safe condition of the premises. We need not, however, pursue that line of inquiry.

Rather, we shall inquire whether the record contains sufficient evidence to justify the trial court's essential but implied finding that *Prestwood* intended to control the property at the time Taylor was injured. It was Taylor's burden to establish this proposition and we believe the evidence is unquestionably insufficient. The only evidence of her intent to control is her possession of the key, and the control over access that it would ordinarily signify. But under the totality of the evidence, her possession of the key could not rationally imply her control of access, but only that she *had* access to the premises. The parties agreed in their testimony that she possessed the key only at the sufferance of Taylor, who had the power to withdraw his indulgence at any time owing to his superior and exclusive legal right of possession. The evidence is thus undisputed and agreed that Prestwood had no power to exclude Taylor or any who entered by means of his

key and under his invitation or consent. Therefore, Prestwood's possession of the key, in the circumstances made by the evidence, was *not* a symbol of *her* control but of *Taylor's*, which he had exercised by *permitting* her to have the key and the resulting means of entering the premises.

We therefore must reverse the judgment because the only evidence of her intent to control the premises—her possession of a key—is factually insufficient, under *all* the evidence, to justify a conclusion that Prestwood intended to control the premises. This would appear to us to be especially true as against Taylor. Under Taylor's own evidence, Prestwood was powerless to forbid his entry and she believed that to be the case. Thus, even had she known of the dangerous condition, she could not have prevented Taylor's injury by excluding him from the property. It is irrational in these circumstances to infer an intention on her part to control the property.

### TAYLOR'S STATUS AS A "BUSINESS INVITEE"

For the purpose of the discussion which follows, we shall assume (contrary to our holding above) that the trial court could validly conclude that Prestwood was a "possessor" of the premises upon whom the law imposed the legal duties essential to a cause of action for negligence. Only one such duty is material to the case, however, for the judgment below rests exclusively upon the trial court's determination that Prestwood breached a duty to make the premises safe for Taylor's visit *by failing to inspect them to discover dangerous conditions,* with a corollary duty to repair any dangerous condition or warn Taylor of its existence. Prestwood contends the evidence is legally and factually insufficient to establish such a duty because it does not show circumstances under which the trial court could reasonably conclude that Taylor was a "business visitor" (or "business invitee" in the words of the trial court) to whom these duties were owed. We agree and must therefore reverse the judgment on this alternative ground.

■ The "possessor" of real property, that is to say, the person charged with the legal duties essential to a cause of action for negligence, owes the duty of inspection to his "invitees" but not to his "licensees." In the words of the Restatement, the distinction is as follows:

A possessor of land owes to a *licensee* no duty to prepare a safe place for the licensee's reception or to inspect the land to discover possible or even probable dangers. [§ 342, comment d]

An *invitee* is entitled to expect that the possessor will take reasonable care *to ascertain* the actual condition of the premises and, having discovered it, either to make it reasonably safe by repair or to give warning of the actual condition and the risk involved therein. [§ 343, comment d]

(emphasis added). *See generally, State v. Tennison,* 509 S.W.2d 560 (Tex.1974); *Adam Dante Corporation v. Sharpe,* 483 S.W.2d 452 (Tex.1972); *Olivier v. Snowden, supra.* Who then are "invitees" entitled to the duty of inspection; and, who are "licensees" who must take the premises as they find them?

We find that "invitees" are categorized and defined by the following characteristics:

(1) an invitee is either a public invitee or a business visitor.

(2) a public invitee is a person who is invited to enter or remain on land as a member of the public *for a purpose for which the land is held open to the public.*

(3) A business visitor is a person who is invited to enter or remain on land *for a purpose directly or indirectly connected with business dealings with the possessor of the land.*

Restatement (Second) of Torts § 332 (emphasis added). As indicated previously, Taylor's status as an "invitee" cannot arise from the fact that the land was held open to the public, for that circumstance is not shown by any evidence. On the other hand, Taylor could unquestionably fall within the class of "business visitor" or "business invitee" who enters for a business purpose of his own "which is connected with any purpose, business or otherwise, for which the possessor uses the land." Restatement (Second) of Torts § 332, comment *e.* In any case, however, Taylor could not be an "invitee", business or otherwise, except that his presence on the premises be by Prestwood's *invitation* as opposed to her *permission. Olivier v. Snowden, supra,* at 550.

■ The distinctive hallmark of the requisite invitation is the possessor's *desire* that the visitor come onto the premises— from this the law infers the possessor's representation that the premises are safe for the visitor's entry. In Prosser's words,

*Without this element of "invitation," and the assurance that it carries, the potentiality of benefit to the occupier is not enough to make the visitor an invitee.* Thus, salesmen, workmen, workmen seeking employment, or prospective purchasers or tenants of land are considered invitees when they come to a place which they have good reason to believe to be open for possible dealings with them, but not when they enter without such encouragement....

It is in connection with invitations to enter private land, not held open to the public, that possible pecuniary benefit has its importance; but only as justifying an expectation that the place has been prepared and made safe for the visit. Anyone *invited* to transact business or do work on private premises not open to the public normally has the assurance that the place is prepared for him; but one who comes to *volunteer* assistance, *although he confers benefit,* is treated as a licensee, unless the circumstances indicate that he has reason to expect protection in return.

Prosser, *supra,* at 390–91 (emphasis added). In other words, any potential benefit to the possessor, resulting from the visitor's presence on private premises, is insufficient to constitute the visitor an "invitee" unless the circumstances *also* show the *invitation* necessary to imply a representation that the premises are reasonably safe

for the visitor. In the Restatement, we find the same theory:

> Although invitation does not in itself establish the status of an invitee, it is *essential* to it. An invitation differs from mere permission in this: an invitation is conduct which justifies others in believing that the possessor *desires* them to enter the land; permission is conduct justifying others in believing that the possessor is *willing* that they shall enter if *they* desire to do so. Any words or conduct of the possessor which lead or encourage the visitor to believe that his entry is *desired* may be sufficient for the invitation. . . .
>
> Mere permission, as distinguished from invitation, is sufficient to make the visitor a licensee as stated in § 330; but it does not make him an invitee, even where his purpose in entering concerns the business of the possessor. . . .

Restatement (Second) of Torts § 322, comment *b* (emphasis added). The comment emphasizes the minimum evidence necessary to clothe a visitor with the legal status of an "invitee"—words or conduct by the possessor that lead or encourage the visitor to believe that his entry is *desired* by the possessor. On the other hand, if the words and conduct justify one in believing that the possessor is merely *willing* for the visitor to enter the premises if *he* so desires, that does not constitute him an "invitee" *even though* his entry is connected with a purpose, business or otherwise, for which the possessor uses the land. *Olivier v. Snowden, supra,* at 550.

Because there is no evidence of an express invitation in the present case, we must inquire whether the words and conduct of Prestwood, shown in the evidence, justified the trial court's implied but essential conclusion that Prestwood *desired* Taylor's entry on the property. Under the evidence adduced in the case, this may only be inferred from Prestwood's words and conduct in connection with the following incident. As mentioned previously, Taylor made several visits to the premises following his appointment by the bankruptcy court. On June 5, 1981, he obtained from the sheriff a key to the locked premises.

He entered and made a "quick check" of the contents of the building, following which he placed on the exterior of the building a sign indicating that the contents of the building were in the "custody" of the bankruptcy court. He returned to the premises on June 8, 1981, and discovered that the key given him by the sheriff would no longer open the lock. The next day, he contacted Charles Perkins, a real estate agent, who was attempting to lease the premises for Prestwood. He learned that Perkins had had the premises "re-keyed." At this point, an immaterial conflict arises in the testimony of Taylor and Prestwood.

Prestwood testified that she asked Perkins to have keys made so that he could show the premises to prospective new tenants. Before doing so, however, she asked Taylor's permission to have the keys made. According to Prestwood, Taylor gave her permission to have the keys made but "he wasn't really pleased about it." She stated that she requested Taylor's permission because she understood that he was legally in control of the premises owing to the bankruptcy proceeding. Unknown to her, Perkins then had the lock changed instead of merely obtaining additional keys to fit the existing lock.

Taylor testified, on the other hand, that Prestwood *never requested* his permission to have the keys made or change the lock. He stated that he called both Prestwood and Perkins when he could not gain access to the premises on June 8, 1981. According to Taylor's testimony, Prestwood informed him that she had Perkins "make new keys or do something to the locks" and that Prestwood "wanted [Taylor] out of the building." This is the only conflict in the evidence on the point in issue. We shall accept Taylor's version, including the statement that Prestwood did *not* desire his presence in the building.

Resuming our summary of the uncontradicted testimony, Perkins left a key to the premises at Taylor's office the next day, June 9, 1981. The record is silent as to any subsequent words or conduct by Prestwood or Perkins that may have preceded Taylor's

entry on the premises on July 10, 1981, the date he was injured.

■ It is obvious that none of the foregoing evidence will reasonably support the trial court's conclusion that Prestwood *desired* Taylor's presence on the premises *unless* it be merely the act of giving Taylor a key to fit the new lock. We hold this to be legally insufficient for without more it simply establishes that Prestwood was *willing* that Taylor enter the premises when and if *he* wished to do so for *his* purposes. Consequently, it follows that Taylor was no more than a "licensee" to whom the duty of inspection was not owed. *Olivier v. Snowden, supra,* at 550. On the other hand, if we consider all the evidence, including both parties' views of Taylor's superior right to control the premises, we must hold the evidence factually insufficient, for Taylor's evidence is unmistakenly clear that Prestwood wanted Taylor out of the building and not in it, although she assumedly had no choice in the matter.

■ In summary, we hold the evidence is legally and factually insufficient to support the trial court's essential but implied determination that Taylor was on the premises, at the time he was injured, under an implied invitation from Prestwood. Without the invitation, Taylor could not be a "business visitor" irrespective of his purpose in being on the premises. In addition, we hold there is no evidence to support the trial court's finding that Taylor's presence on the premises was of "mutual aid" to Taylor and Prestwood. This was evidently intended to supply the other element essential to constitute Taylor a "business visitor." It rests upon the idea that Prestwood might benefit from Taylor's presence on the property in his official capacity, since she was a creditor of the bankrupt tenant in a general sense, although it is not shown by the evidence that she was listed as such in the bankruptcy proceedings. Such a benefit is obviously indirect and falls short of the *direct* pecuniary benefit required under Texas law, notwithstanding the Restatement and its provision for mere "business dealings." *See Olivier v. Snow-*

*den, supra,* at 550; Keeton, *Torts,* 23 Sw. L.J. 1, at 14–15 (1969).

## TAYLOR'S STATUS AS TRUSTEE IN BANKRUPTCY

■ We may turn finally to the nature of the duties owed by Prestwood, *if* she were a "possessor" of the premises, by virtue of Taylor's status as a trustee in bankruptcy, his reason for being on the premises when he was injured. Taylor's position is that he was legally privileged to enter the premises by reason of his official status. Even so, this did not make him an invitee to whom Prestwood owed a duty to make the premises reasonably safe, with the attendant duties of inspection and repair or warning.

In § 345 of the Restatement, we find the following rules setting out the nature of the possessor's duties in cases such as the present:

(1) Except as stated in Subsection (2), the liability of a possessor of land to one who enters the land only in the exercise of a *privilege,* for *either* a *public* or a *private* purpose, and *irrespective* of the possessor's consent, is the same as the liability to a *licensee.*

(2) The liability of a possessor of land to a public officer or employee who enters the land in the performance of his public duty, and suffers harm because of a condition of a part of the land *held open to the public,* is the same as the liability to an *invitee.*

(emphasis added). If we assume Taylor's premise that he was legally entitled to enter Prestwood's property by reason of his privilege, given by law to trustees in bankruptcy proceedings, Prestwood's consent became immaterial unless it amounted to an invitation, as discussed above. We have held that the evidence does not show an invitation. Moreover, we must reject as well the idea of an implied invitation resulting from holding open the premises to the public which is necessary to invoke in her the duties owed an invitee, for it is undisputed that the premises were *not* held open to the public. Hence, Taylor's status cannot fall within § 345(2) above. Even though he was a public officer on the prem-

ises in the performance of his official duties, the necessary element of an invitation is not shown by the evidence.

We are left then with the proposition that the evidence shows only that Taylor entered the premises in the performance of his duties with Prestwood's consent (which was immaterial); and, as specified in § 345(1), she owed him only the duties owed a licensee. These do not include the duty of inspection as discussed previously. Therefore, Taylor's official status could not create in Prestwood any greater duty upon which her liability in negligence could be founded.

For the reasons given, our holdings relative to Taylor's official status are determined by our previous holdings relative to the insufficiency of the evidence to show that Prestwood desired Taylor's presence on the property. Accordingly, we hold the evidence is legally and factually insufficient to support the trial court's determination that Taylor was a "business invitee" by reason of his official status.

We conclude then that Taylor failed to show by sufficient evidence any circumstances giving rise to any legal duty upon which Prestwood could be liable to him in a negligence action. We therefore reverse the trial court judgment and render judgment that Taylor take nothing by his suit.