TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-98-00650-CV







David Krause, as Guardian of Mary Will Krause, Appellant



v.



Larry D. Kinnison, Individually, and d/b/a Kinnison Chiropractic Center, Appellee







FROM THE DISTRICT COURT OF BURNET COUNTY, 33RD JUDICIAL DISTRICT


NO. 18,587, HONORABLE GUILFORD L. JONES, JUDGE PRESIDING








 Appellant David Krause ("Krause"), as the guardian of Mary Will Krause ("Mrs.
Krause"), appeals the district court's summary judgment in favor of appellee, Larry Dale
Kinnison, individually and doing business as Kinnison Chiropractic Center ("Kinnison"). We will
reverse the summary judgment and remand the case to the district court for trial on the merits.


BACKGROUND

 This is a premises-liability case. In July 1996, Mrs. Krause, then 73 years old,
suffered a severe head injury when she apparently fell in the parking lot of Kinnison Chiropractic
Center. As a consequence of her injuries, she is incapacitated, and her son, Krause, is her
guardian. (1) As guardian, Krause brought suit to recover damages from Kinnison for his alleged
negligence as possessor of the property on which Mrs. Krause was injured. (2) 

 Kinnison moved for summary judgment on the ground that Mrs. Krause was a
licensee on his property at the time of her injury and that he had not breached any legal duty owed
to her as such. Alternatively, Kinnison asserted that he had not breached any duty owed Mrs.
Krause as an invitee. The district court granted summary judgment in favor of Kinnison based
on the court's finding that Mrs. Krause was not a business invitee at the time of her injury. (3)

 On appeal, Krause argues that summary judgment is inappropriate in this case
because the summary-judgment evidence raises issues of material fact regarding Mrs. Krause's
status as an invitee or licensee and whether, regardless of her status, Kinnison breached the duty
of care owed her. 


DISCUSSION

 The standards for reviewing a motion for summary judgment are well established:
(1) the movant has the burden of showing that there is no genuine issue of material fact and is
entitled to judgment as a matter of law; (2) in deciding whether there is a fact issue precluding
summary judgment, evidence favorable to the non-movant will be taken as true; and (3) every
reasonable inference or any doubt must be indulged in favor of the non-movant. See Nixon v. Mr.
Property Management Co., 690 S.W.2d 546, 548-49 (Tex. 1985).

 A possessor of land has a duty to warn licensees of dangerous conditions likely to
cause injury only when the possessor has actual knowledge of such conditions, see State v.
Tennison, 509 S.W.2d 560, 562 (Tex. 1974), and must abstain from doing any intentional or
willful act endangering the safety of the licensee. See Olivier v. Snowden, 426 S.W.2d 545, 549
(Tex. 1968). The possessor owes the licensee no duty "to prepare a safe place . . . or to inspect
the land to discover possible or even probable dangers." Prestwood v. Taylor, 728 S.W.2d 455,
462 (Tex. App.--Austin 1987, no writ) (quoting Restatement (Second) of Torts § 342, comment
d (1965)). The possessor owes a greater duty to an invitee. The possessor must take reasonable
care to ascertain the actual condition of the premises and ensure that they are reasonably safe or
"give warning of the actual condition and the risk involved therein." Id. 


Status as a Business Invitee

 Krause first asserts that the district court erred in holding that Mrs. Krause was not
a business invitee because there exist disputed fact issues concerning Mrs. Krause's status on
Kinnison's property at the time of her injury. We agree.

 A business invitee is a person who is invited to enter on another's property for a
purpose directly or indirectly connected with the business dealings of the possessor of the
premises. See Prestwood, 728 S.W.2d at 462 (quoting Restatement (Second) of Torts § 332
(1965)). To determine whether a person is a business invitee, an important factor to be considered
is the desire or willingness of the possessor of the premises to receive the person. See Renfro
Drug Co. v. Lewis, 235 S.W.2d 609, 616 (Tex. 1950); Carlisle v. J. Weingarten, Inc., 152
S.W.2d 1073, 1076 (Tex. 1941) (both citing Restatement of Torts § 332, subsection (b));
Prestwood, 728 S.W.2d at 463 (citing Restatement (Second) of Torts § 322, comment b (1965)). 
This desire can be inferred from the possessor's words or other conduct. See Renfro, 235 S.W.2d
at 616; Carlisle, 152 S.W.2d at 1976. For example, "[t]he nature of the use to which the
possessor puts his land is often sufficient to express to the reasonable understanding of the public
or classes or members thereof a willingness or unwillingness to receive them." Renfro, 235
S.W.2d at 616; Carlisle, 152 S.W.2d at 1076. 

 Moreover, it is not necessary that a visitor enter the possessor's property with the
intent to enter immediate business dealings with the possessor. See Renfro, 235 S.W.2d at 617;
Carlisle, 152 S.W.2d at 1076 (both citing Restatement of Torts § 332, subsection (c)). The
benefit to the possessor may be indirect and in the future. Renfro, 235 S.W.2d at 617; Carlisle,
152 S.W.2d at 1076. In this context, a visitor to a shop may not buy anything, but the advertising
benefit to the shopkeeper is sufficient to make the visit "connected with his business." Renfro,
235 S.W.2d at 617 (quoting Restatement of Torts § 332, subdivision (c)).

 Kinnison argues that Mrs. Krause was not a business invitee because the evidence
establishes as a matter of law that Mrs. Krause was delivering Avon products to his wife, Carrie
Kinnison, who is also an employee of Kinnison Chiropractic Center. However, viewing the
evidence in the light most favorable to Krause, as we must, see Nixon, 690 S.W.2d at 548-49, the
summary-judgment evidence reflects that a material fact issue exists regarding whether Mrs.
Krause's visit to the clinic was connected with the business dealings of Kinnison. It is undisputed
that Mrs. Krause had been Kinnison's patient for over ten years prior to her injury. Both
Kinnison and his wife testified by deposition that Mrs. Krause would sometimes stop by the clinic
to visit or to sell and deliver Avon products to Carrie Kinnison. Kinnison admitted that during
these visits, and without a scheduled appointment, Mrs. Krause would at times receive
chiropractic treatment. In response to questions regarding whether Kinnison would sometimes
treat Mrs. Krause without an appointment, Carrie Kinnison stated:


Yes, sir. Not all the time would she have an appointment. You know,
occasionally, if she felt like she needed a treatment, she may just drop in. And she
would come in and say, "Does Dr. Kinnison have time to treat me today?" 



And when asked if Mrs. Krause might initially come to the clinic to sell Avon products but later
decide to have a chiropractic treatment, Kinnison answered, "Possibly." Kinnison also testified
that it is advantageous to his business to have patients like Mrs. Krause stop by the office any time
they wish because such visits help develop better relationships that benefit his practice
economically.

 Salesmen may be considered invitees when they come to a place that they have
good reason to believe is open for possible dealings with them. See Prestwood, 728 S.W.2d at
462 (citing Prosser, Law of Torts § 61, at 390-91 (4th ed. 1971)). While there is evidence that
Mrs. Krause may not have approached the clinic with the intent to engage in immediate business
dealings with Kinnison, the summary-judgment evidence, at a minimum, raises an issue as to
whether Mrs. Krause was encouraged by Kinnison's words or conduct to believe that her presence
at the clinic was desired by Kinnison for purposes related to his business. See Renfro, 235
S.W.2d at 617; Carlisle, 152 S.W.2d at 1076; Prestwood, 728 S.W.2d at 463.

 Therefore, we find that the district court erred in holding that, as a matter of law,
Mrs. Krause was a not business invitee.


Remaining Issues

 Krause additionally contends that the summary-judgment evidence raised fact issues
regarding whether an unreasonably dangerous condition existed on Kinnison's property, whether
Kinnison had actual or constructive notice of this condition, and, if Mrs. Krause was a licensee,
whether Kinnison failed to correct a known hazard. These contentions mirror the remaining
allegations in Kinnison's motion for summary judgment: that he did not breach his duty to a
licensee "with conduct that was willful, wanton or grossly negligent," or "by failing to warn of
a dangerous condition that he knew about, but that [Mrs. Krause] did not."

 Having considered the ground on which the district court granted summary
judgment, we may, in the interest of judicial economy, consider the grounds on which the court
did not rule. See Cincinnati Life Ins. Co. v. Cates, 927 S.W.2d 623, 625 (Tex. 1996). We find
it appropriate to consider the remainder of Kinnison's motion for summary judgment.

 We conclude that doubt exists as to whether Mrs. Krause was an invitee or licensee
on Kinnison's premises at the time or her injury. When such doubt exists, a fact issue as to the
injured party's status is raised. See generally Olivier, 426 S.W.2d at 549.

 With regard to the condition of the premises at the time of Mrs. Krause's injury,
the summary-judgment evidence reflects that the parking lot at the clinic where Mrs. Krause was
injured is divided into two sections, one approximately two to three feet higher than the other. 
To enter the clinic, a visitor who parks on the high side of the lot must either step down to the
lower level or walk toward the street, where the two levels meet. While there are no eye
witnesses to the event causing Mrs. Krause's injury and Mrs. Krause has no recollection of it, the
summary-judgment evidence, when viewed in Krause's favor, (4) contains the opinion testimony of
a licensed physician and professional engineer that Mrs. Krause fell from the high side of the
parking lot to the low side, striking her head. A safety engineer testified that it is unlikely that
Mrs. Krause perceived the extent of the drop-off or the dangers associated with it. The summary-judgment evidence also reflects, however, that the division in the parking lot was clearly visible,
and that Mrs. Krause had visited the clinic approximately 150 times without incident, giving rise
to at least an inference that she was aware of the parking lot's configuration. 

 We find that the summary-judgment evidence raises issues of fact concerning
whether the condition of the parking lot was dangerous; whether the condition was known to
Kinnison, Krause, or both to be dangerous; and whether Kinnison had a duty to either remedy the
condition or warn Mrs. Krause of it.


CONCLUSION


 We sustain Krause's issue that the district court erred in granting summary
judgment for Kinnison. We reverse the district court's summary judgment and remand this cause 
for a trial on the merits.



 


 Lee Yeakel, Justice

Before Justices Jones, B. A. Smith and Yeakel

Reversed and Remanded

Filed: September 10, 1999

Do Not Publish
1. Krause was appointed Mrs. Krause's guardian by the County Court at Law No. 1 of Bell
County.
2. Kinnison is also the owner of the property.
3. We find that the district court's judgment contains language equivalent to a Mother Hubbard
clause, and is thus final and appealable. In general terms, the judgment states that (1) the "[c]ourt
GRANTS [Kinnison's] Motion [for Summary Judgment] in its entirety," and (2) the court's
finding that Mrs. Krause was not a business invitee at the time of her injury "disposes of the
entire case." See Mafrige v. Ross, 866 S.W.2d 590, 592 (Tex. 1993).
4. See Nixon, 690 S.W.2d at 548-49.



y-judgment evidence raised fact issues
regarding whether an unreasonably dangerous condition existed on Kinnison's property, whether
Kinnison had actual or constructive notice of this condition, and, if Mrs. Krause was a licensee,
whether Kinnison failed to correct a known hazard. These contentions mirror the remaining
allegations in Kinnison's motion for summary judgment: that he did not breach his duty to a
licensee "with conduct that was willful, wanton or grossly negligent," or "by failing to warn of
a dangerous condition that he knew about, but that [Mrs. Krause] did not."

 Having considered the ground on which the district court granted summary
judgment, we may, in the interest of judicial economy, consider the grounds on which the court
did not rule. See Cincinnati Life Ins. Co. v. Cates, 927 S.W.2d 623, 625 (Tex. 1996). We find
it appropriate to consider the remainder of Kinnison's motion for summary judgment.

 We conclude that doubt exists as to whether Mrs. Krause was an invitee or licensee
on Kinnison's premises at the time or her injury. When such doubt exists, a fact issue as to the
injured party's status is raised. See generally Olivier, 426 S.W.2d at 549.

 With regard to the condition of the premises at the time of Mrs. Krause's injury,
the summary-judgment evidence reflects that the parking lot at the clinic where Mrs. Krause was
injured is divided into two sections, one approximately two to three feet higher than the other. 
To enter the clinic, a visitor who parks on the high side of the lot must either step down to the
lower level or walk toward the street, where the two levels meet. While there are no eye
witnesses to the event causing Mrs. Krause's injury and Mrs. Krause has no recollection of it, the
summary-judgment evidence, when viewed in Krause's favor, (4) contains the opinion testimony of
a licensed physician and professional engineer that Mrs. Krause fell from the high side of the
parking lot to the low side, striking her head. A safety engineer testified that it is unlikely that
Mrs. Krause perceived the extent of the drop-off or the dangers associated with it. The summary-judgment evidence also reflects, however, that the division in the parking lot was clearly visible,
and that Mrs. Krause had visited the clinic approximately 150 times without incident, giving rise
to at least an inference that she was aware of the parking lot's configuration. 

 We find that the summary-judgment evidence raises issues of fact concerning
whether the condition of the parking lot was dangerous; whether the condition was known to
Kinnison, Krause, or both to be dangerous; and whether Kinnison had a duty to either remedy the
condition or warn Mrs. Krause of it.