Juana NAVARRO–BECKER, Plaintiff,

v.

**UNTIED STATES of America, Defendant.**

**Civil Action No. W–08–CA–358.**

United States District Court, W.D. Texas, Waco Division.

March 9, 2010.

---

emails. *See* Minute Entry dated February 26, 2010.

**44.** R. Doc. No. 30, pp. 22–23.

**45.** *See* R. Doc. No. 32.

Steven N. Walden, The Carlson Law Firm, P.C., Killeen, TX, for Plaintiff.

Clayton R. Diedrichs, Dimitri Narciso Rocha, U.S. Attorney's Office, San Antonio, TX, for Defendant.

## ORDER

JEFFREY C. MANSKE, United States Magistrate Judge.

This negligence action for damages under the Federal Tort Claims Act, 28 U.S.C.

§§ *2671 et seq.*, came before the Court for non-jury trial on February 23rd through February 24th, 2010. Based on the admitted evidence and stipulations of fact the Court makes the following findings of fact and conclusions of law pursuant to Fed R. Civ. P. 52(a).

## I. Factual Background

The Plaintiff alleges that on June 11, 2005, she was a patron of the Clear Creek Army Air Force Exchange Service store ("PX") in Fort Hood, Texas. While walking through the parking lot of the PX to her car from the Fort Hood National Bank ("Bank"), a privately owned bank located within the PX, the Plaintiff tripped over a piece of rebar that was either protruding horizontally from a broken concrete wheel block or out of the asphalt near the broken wheel block. Plaintiff alleges that she then fell forward, fracturing her right wrist and sustaining injuries to her face, head, thumb, and left knee. In sum, Plaintiff claims that Defendant was negligent in that it failed to use ordinary care by various acts and omissions, including: failing to adequately and properly monitor the condition of its parking lot; failing to ensure that its employees reduce or eliminate any unreasonably dangerous conditions; failing to give adequate and comprehensible warnings to Plaintiff of the unreasonably dangerous condition; and failing to provide a parking area free from dangerous conditions.

Prior to the introduction of evidence, the parties stipulated to the following facts:

### A. Plaintiff Juana Navarro–Becker

1. Plaintiff was born on December 2, 1946. At the time of the incident that forms the basis of this lawsuit, Plaintiff was 58 years of age. At the time of trial, Plaintiff was 63 years of age. At the time of the incident and at the time of trial, Plaintiff worked at Darnall Army Community Hospital ("DACH") as a nurse practitioner through an independent contractor.

### B. The Incident of June 11, 2005

2. On the morning of Saturday, June 11, 2005, Plaintiff drove to the Fort Hood National Bank located at the Clear Creek Post Exchange in Fort Hood, Texas. The weather was clear. Plaintiff was not accompanied by any individuals.

3. Plaintiff parked in the adjacent parking lot directly north of the PX. Plaintiff did not go to the Fort Hood National Bank with anyone else. After exiting the bank, Plaintiff returned to the parking lot. Plaintiff was crossing through the northside parking lot aisles and between wheel stops when Plaintiff tripped over a wheel stop and/or rebar and fell to the ground. There were no vehicles in the vicinity of the wheel stop and/or rebar on which Plaintiff tripped.

4. After Plaintiff fell, an unidentified woman approached Plaintiff and asked if Plaintiff was all right. The unidentified woman called an ambulance.

5. Plaintiff bruised her right forehead, received a left knee abrasion, injured her coccyx and neck, and fractured her right wrist.

6. DACH emergency medical service, the responding ambulance, received a call at 8:22 a.m. and arrived at the accident scene at 8:28 a.m.

7. Plaintiff was taken to DACH's Emergency Room ("ER") for care and arrived at 8:51 a.m.

8. Plaintiff was treated in the ER by Dr. Scott Bier. Plaintiff was discharged from the ER that same day at 1:15 p.m. Plaintiff was discharged with instructions to follow up through the ER the following day (Sunday). Plaintiff was issued a splint for her right wrist. On June 12, 2005, Plaintiff followed up at DACH.

9. Plaintiff was seen by Care Chiropractic on June 14, 2005, June 29, 2005, and July 1, 2005. Plaintiff resumed to work in August 2005. Plaintiff was seen by occupational therapy at DACH beginning in July 2005 to August 2005.

### C. Fort Hood Clear Creek PX Northside Parking Lot

10. The Army and Air Force Exchange Service ("AAFES") is responsible for maintaining the PX and its surrounding area (such as the parking lot).

11. In June 2005, custodial staff ("Code–12") at the Clear Creek PX, such as Ervin Duplush, Michael Williams, James Cearfoss IV, and Michael Russell should have reported a safety hazard, including a broken wheel stop. In 2005, Mr. Duplush, Mr. Williams, Mr. Cearfoss, and Mr. Russell were unaware that a woman tripped and fell over a wheel stop.

12. In 2005, Montina Arbuckle was an employee (Sales Manager) at the Clear Creek PX. Ms. Arbuckle testified that AAFES employees had a responsibility to report safety hazards, and that a number of employees would regularly look over the northside parking lot, and the employees would have reported a safety hazard, including a broken wheel stop. Ms. Arbuckle was unaware that a woman tripped and fell over a wheel stop.

13. In 2005, Rita Shearer was an Operations Manager assigned to the Clear Creek PX. Ms. Shearer does not recall ever being told by anyone or becoming aware that anyone tripped and fell on a concrete wheel stop and/or rebar protruding from a concrete wheel stop at the Clear Creek PX. Ms. Shearer should have reported the condition to the Department of Public Works ("DPW") if she had become aware of a dangerous condition, and the custodians would have done likewise.

This case appears to be one of first impression presenting the issue of what duty of care is owed to an individual authorized to be on a closed military base who is injured as a result of an alleged dangerous condition in the parking lot of a px.

### II. The Federal Tort Claims Act

The Federal Tort Claims Act, 28 U.S.C. §§ 2671 *et seq.,* (hereinafter referred to as the ("FTCA")) is the basis for the Plaintiffs claim against the Government in this suit. Under the FTCA, the liability of the United States is the same as that of a private person under like circumstances. 28 U.S.C. § 2674. Specifically, the FTCA gives the federal district courts jurisdiction for all claims against the Government for losses:

"... caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

28 U.S.C. § 1346(b)(1).

■ The above provisions, given their plain and natural meaning, make the United States liable to Plaintiff for the negligence, if any, of AAFES in maintaining the Clear Creek PX parking lot if Texas law would impose liability on private persons under similar circumstances. *See Rayonier v. United States,* 352 U.S. 315, 319, 77 S.Ct. 374, 1 L.Ed.2d 354 (1957). The Court will now examine the applicable laws of the State of Texas concerning premises liability.

### III. Liability Issues

#### A. Duty of care owed to Plaintiff

■ In a Texas premises liability case based on negligence, any recovery is based upon the Plaintiff:

"proving the existence and violation of a legal duty owed to the plaintiff by the defendant. In each instance, the duty owed by a premises owner or occupant (possessor) is determined by the status of the person injured on the premises. This status is a legal question except when issues of fact exist to warrant submission to a jury. A person who enters the property of another will normally be classified as an invitee, a licensee, or a trespasser."

*Lechuga v. So. Pacific Transportation Co.,* 949 F.2d 790 (5th Cir.1992).

■ At issue in the instant case is whether Plaintiff is an "invitee" or a "licensee." In Texas, there are two types of invitees: public or business. *Id.* at 795. A public invitee is one who is invited to enter and remain on land as a member of the public for a purpose for which land is held open to the public. *Id.* A business visitor or invitee is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land. *Id.* A licensee is:

> "a person whose entrance upon or use of the premises of another is permitted by the owner under such circumstances that he is not a trespasser but is without any express or implied invitation. He is on the premises by sufferance and not by virtue of any business or contractual relations with, or any enticement, allurement, or inducement to enter being held out to him by the owner or occupant, but merely in his own interest or for his own purposes, benefits, convenience or pleasure."

*Lechuga,* 949 F.2d at 798. At the hearing for Judgment on Partial Findings, Plaintiff conceded that she is not a public invitee, leaving only the decision as to whether she is a business visitor or a licensee. *See Barta v. United States,* 898 F.Supp. 439 (W.D.Tex.1995)(non-military person on a closed military base cannot be considered a public invitee). In an Order denying Defendant's Motion for Summary Judgment, the Court opined that it was possible for Plaintiff to be a business visitor or invitee for the reason that she was retired military and authorized to be on the closed post for purposes including shopping at the px.

■ In the present case, a dispute exists between the parties as to what standard should be applied by the Court for determining whether Plaintiff is a business visitor and; therefore, owed a higher standard of care than that owed to a licensee. Plaintiff contends that the land owner must (1) either expressly or impliedly invite the visitor's entry and (2) the visitor's presence must give rise to at least a *potential* pecuniary benefit to the owner. Defendant agrees that business visitor status must include an invitation, but differs by contending that the land owner must have a *direct* pecuniary benefit. Plaintiff argues that the Texas Supreme Court opinion in *Olivier v. Snowden,* 426 S.W.2d 545 (Tex.1968) supports the potential pecuniary benefit theory, while Defendant relies on the Fifth Circuit's interpretation of Texas law set forth in *Lechuga.*

In *Lechuga,* the Fifth Circuit noted that some jurisdictions have "relaxed" the standard for determining if a person is a business visitor or invitee adopting the Restatement (Second) of Torts § 332(3) potential pecuniary benefit or "business dealings" standard, but held that Texas continues to require a direct pecuniary benefit. *Lechuga,* 949 F.2d at 796; *see also Prestwood v. Taylor,* 728 S.W.2d 455, 458–59 (Tex.App.-Austin 1987, writ ref'd n.r.e.). In determining that the Texas courts require a direct pecuniary benefit to the land owner, the Fifth Circuit relied upon *Prestwood* noting that the Austin Court of Appeals declined to find a direct

pecuniary benefit where the visitor "might have benefitted eventually from the [visitor's] presence." *Lechuga*, 949 F.2d at 797–98. Further, the Austin Court of Appeals citing to the Texas Supreme Court's decision in *Olivier* relied upon by Plaintiff explicitly holds that "[b]oth an invitation and a direct pecuniary benefit are yet required in Texas." *Prestwood*, 728 S.W.2d at 459 *citing Olivier*, 426 S.W.2d at 550. Despite the clear language of the cases above, the Plaintiff argues that *Olivier* suggests that Texas follows the potential pecuniary benefit theory. The undersigned disagrees and finds that Texas law requires a direct pecuniary benefit to the land owner for a visitor to be classified as a business visitor or invitee. In other words, the land owner must receive a direct financial or monetary benefit from the visitor.

In reviewing the evidence introduced at trial, the Court finds that the Plaintiff did not prove that AAFES received a direct pecuniary benefit when Ms. Navarro–Becker walked through the PX, withdrew money from the bank located within the PX and returned to her car. At trial, it was elicited during the cross examination of the Plaintiff that she did not purchase anything at the PX on the date of the accident. She testified that she was probably carrying a "tiny purse" of about eight inches in size as she left the bank and did not have any other packages. Prior to resting, Plaintiff was recalled as a witness and contradicted her earlier testimony and testified that she "probably" purchased something at AAFES that day based upon the fact that she was in the store for approximately 30 minutes. On cross examination concerning this new testimony, Plaintiff conceded that in her deposition she testified that she did not purchase anything that day and that she made a similar statement in her Affidavit offered in opposition to Defendant's Motion for Summary Judgment. Weighing the evidence, the Court finds Ms. Navarro–Becker's statement that she "probably" purchased something from the PX on the day of the accident lacking in credibility based upon her earlier testimony in the trial, her deposition testimony and affidavit. Since she did not purchase anything at the PX on the day in question, the PX did not receive a direct pecuniary benefit as a result of her visit. As such, the Plaintiff's status is that of a licensee and not a business visitor or invitee.

## B. Plaintiffs status as licensee

The land owner's or possessor's duty owed to a licensee is merely not to injure him wilfully, wantonly, or through gross negligence. *Lechuga*, 949 F.2d at 794 *citing Burton Constr. & Shipbuilding Co. Inc. v. Broussard*, 154 Tex. 50, 273 S.W.2d 598 (1955). An exception to the standard of care owed to licensees does exist when "a possessor has [actual] knowledge of a dangerous condition on the land, and the licensee does not, the possessor has a duty either to warn the licensee or to make the condition reasonably safe." *Lechuga*, 949 F.2d at 794–95 *citing Lower Neches Valley Authority v. Murphy*, 536 S.W.2d 561 (1976); *Weaver v. K.F.C Management, Inc.*, 750 S.W.2d 24 (Tex.App.-Dallas 1988, writ denied).

"Actual knowledge requires knowledge that the dangerous condition existed at the time of the accident, as opposed to constructive knowledge which can be established by facts or inferences that a dangerous condition could develop over time." *City of Irving v. Seppy*, 301 S.W.3d 435, 444 (Tex. App–Dallas 2009, no pet.) *citing City of Corsicana v. Stewart*, 249 S.W.3d 412, 415–16 (Tex.2008). In determining whether a landowner such as AAFES has actual knowledge of a dangerous condition, "courts generally consider whether the premises owner has received

reports of the potential danger presented by the condition." *Id. citing University of Tex.-Pan Am. v. Aguilar,* 251 S.W.3d 511, 513 (Tex.2008). Additionally, actual knowledge can also be proven through circumstantial evidence. *Id.* "Circumstantial evidence establishes actual knowledge only when it 'either directly or by reasonable inference' supports that conclusion." *Stewart,* 249 S.W.3d at 415 *citing State v. Gonzalez,* 82 S.W.3d 322, 330 (Tex.2002). Actual knowledge embraces those things which a reasonably diligent inquiry and means of information at hand would have disclosed. *City of San Benito v. Cantu,* 831 S.W.2d 416, 425 (Tex.App.-Corpus Christi 1992, no writ); *see also Weaver,* 750 S.W.2d at 26–27 (Tex.App.-Dallas 1988, writ denied) (stating that a licensee is also imputed with knowledge of those conditions perceptible to him, or the existence of which can be inferred from the facts within his present or past knowledge). The Court will now examine the evidence as to whether AAFES had actual knowledge of the dangerous condition at issue, a broken concrete wheel stop.

██  Having examined the testimony and evidence introduced at trial, the Court finds that the Plaintiff has proven by a preponderance of the evidence that circumstantial evidence creates a reasonable inference that the United States through AAFES had actual knowledge of the broken wheel stop. Significant to the Court's decision is the testimony of Michael Williams, a custodial worker at the Clear Creek PX since 1998 and on the day of the accident. Mr. Williams testified that part of his training was to identify safety hazards. Mr. Williams' duties included general upkeep of the parking lot. He testified that prior to June 2005, he had informed the Operations Manager for the Clear Creek PX of complaints about broken wheel stops. Additionally, Mr. Williams testified that prior to June 2005, he had seen damaged wheel stops like this one.

Mr. Williams' testimony regarding prior problems with concrete wheel blocks was corroborated by Mr. Daniel Johnson, a fellow custodian. Mr. Johnson testified that approximately six months prior to the Plaintiffs accident, he saw a broken concrete wheel stop with protruding rebar and had personally tripped over the wheel stop at issue or a similar one. Testimony was also elicited from Monica Arbuckle, PX sales manager in June 2005, that rebar coming from a concrete wheel block such as the instant one is a safety hazard because someone can trip and fall on it. Deborah Jantek, current store manager at the Clear Creek PX, confirmed that the wheel stop identified in Plaintiffs Exhibit No. 8, the instant wheel stop, is a safety hazard.

In finding, that Plaintiff has proven by circumstantial evidence that Defendant had actual knowledge of the broken concrete wheel stop, the Court also found persuasive the testimony of Deborah Jantek concerning the PX's policies and the problems she personally encountered with broken concrete wheel stops at the PX. Ms. Jantek testified that in June 2005 the PX Safety Manual, Plaintiffs Exhibit No. 6, required "regular" inspection of the parking lots when she interprets as "daily." Additionally, Ms. Jantek testified that the policy was that the store manager and/or operations manager should be checking the parking lot to make sure it was not hazardous. Most importantly, Ms. Jantek testified that when she arrived at the Clear Creek PX in September 2005 she encountered numerous problems with broken concrete wheel stops. Significantly, she testified that shortly after her arrival she put in a standing work order for the Fort Hood Department of Public Works to come to the PX weekly to repair broken wheel stops whether she knew of broken ones because of the prevalence of the problem. The testimony of Ms. Jantek

regarding the prevalence of the problem regarding broken concrete wheel blocks within several months of the Plaintiffs accident, coupled with the testimony of the custodian Michael Williams that he informed his superiors at the Clear Creek PX prior to Ms. Navarro–Becker's of similar problems concerning broken wheel blocks, corroborated by Daniel Johnson's testimony regarding the existence of the problem, is circumstantial evidence that Defendant had actual knowledge of the broken concrete wheel stop depicted in Plaintiffs Exhibit No. 8.

### C. Whether Plaintiffs comparative fault precludes recovery

■ Defendant contends that the Plaintiffs comparative fault bars any recovery in this action; or, alternatively, that if her negligence is less than fifty percent, her recovery should be reduced by that percentage. *Tex. Civ. Prac. & Rem.Code* § 33.001 *et seq.* (Vernon 2008). Specifically, Defendant alleges that Plaintiff failed to keep a proper lookout while returning from the bank to her car. Defendant attaches significance to the fact that the weather was clear, the lack of cars in the parking lot near Plaintiff and that she could not identify specifically which piece of rebar caused her to trip. Further, the Defendant argued that the open backed style of shoe worn by Plaintiff on the day in question might have contributed to her fall.

Having carefully considered the evidence, the Court finds that Plaintiff was not negligent and that she maintained a proper lookout while walking. The Plaintiff had no knowledge of either the rebar protruding from the concrete block or the rebar coming up from the asphalt prior to the accident. No evidence was presented that Plaintiff was familiar with the problem of broken concrete wheel blocks in the PX parking lot. Additionally, no credible evidence was offered that Plaintiffs style of

shoe was not appropriate for the circumstances. As such, the Court rejects Defendants contention that Plaintiffs comparative fault bars recovery in this action or that her recovery should be reduced by any percentage.

### D. Liability summary

■ Based upon the above, the Court finds that the United States through AAFES had actual knowledge of the broken concrete wheel stop, Ms. Navarro–Becker did not have knowledge of the condition, AAFES failed to warn Plaintiff of the broken wheel stop's dangerous condition and/or failed to make the condition reasonably safe, and the dangerous condition of the broken wheel stop proximately caused Plaintiffs injuries. The Court will now address the issue of damages.

### IV. Damages

■ The Court, having considered the testimony and evidence relating to the issue of damages, finds that the Plaintiff should be awarded the total sum of $42,356.25. In arriving at this figure, the Court awards damages as follows:

a. $12,356.25 in lost wages. In arriving at this figure, the Court finds Plaintiffs exhibit P–4 to be persuasive. Exhibit P–4 is a Wage and Salary Verification form completed by an authorized representative of Plaintiffs employer which asks whether the employee has missed any time from work as a result of the June 11, 2005 injury. Plaintiffs employer attributed 329.50 hours at a rate of$37.50 as missed time due to the *injury* (emphasis supplied). Although Defendant elicited testimony from Plaintiff that she routinely missed work due to migraines prior to the accident, there is no evidence to suggest that the employer's computation of time attributable to the injury is not credible.

b. $ 20,000.00 in physical pain, past and future mental anguish. Plaintiff testified that when she fell the pain was "excruciating." She also characterized the pain attributable to having her hand set after the fall as being the "worst pain you ever want to have." Dr. Scott Bier testified that Plaintiff was given morphine for pain at the hospital and that her pain should have lasted "a couple of weeks, maybe a little more." As to past and future mental anguish, the Plaintiff testified that the stress attributable to the accident has been significant and that she is extremely frustrated that she is no longer able to perform simple tasks such as cooking, buttoning a shirt or putting on jewelry.

c. $10,000.00 in past and future physical impairment. The Plaintiff testified that the strength in her right hand never returned to the level of June 2005 and that such loss in strength is attributable to the accident. Further, Plaintiff testified that due to the accident she no longer can cook, cut, button a shirt or put on jewelry.

Additionally, the Court finds that the Plaintiff failed to prove by a preponderance of evidence that she is entitled to any other element of damage.

Judgment shall therefore be entered that Plaintiff recover $ 42,356.25 against Defendant.